[Civ. No. 9484.   Third Dist.   Dec. 19, 1958.]

MERLIN A. DAVIS, Appellant, v. RAYMOND A. MILLIGAN, Respondent.

C. Keith Lyde for Appellant.

Raymond A. Leonard for Respondent.

WARNE, J. pro tem.*—Appellant appeals from the judgment of nonsuit rendered in favor of the respondent in an action for personal injuries.

Plaintiff while an invitee and business visitor at a service station operated by Myrle Stephens was thrown from a horse when the horse shied as the result of noise caused by Myrle Stephens kicking an iron device upon the grease lifting rack. Appellant received a severe back injury. Respondent Milligan was the owner of the real property, including the service station, where the accident occurred. Appellant filed his action against both Stephens and the respondent Milligan, but a few days prior to the trial he dismissed the action against Stephens.

Appellant's complaint was in four counts. The first cause of action alleged that Stephens was in control of and working on the premises of the service station, that the accident was caused by his negligence, and that such negligence was a proximate cause of appellant's injuries.

The second cause of action alleged that respondent was the owner and operator of the service station, and that Stephens was the employee and agent of respondent Milligan at the time of the alleged injury.

The third cause of action alleges that Stephens and Milligan were partners doing business on said premises at the time of the injury; and the fourth cause of action alleges that Milligan was the sole and exclusive owner in fee simple of the premises upon which the service station was situated, and was in possession and control of the premises at the time of the accident. The defendant Stephens answered, denying negligence on his part as alleged in Count I, and entered a general denial as to each of the remaining counts. He pleaded two defenses: (1) Contributory negligence on the part of the appellant, and (2) assumption of risk by the appellant.

*Assigned by Chairman of Judicial Council.

Respondent Milligan answered Counts II, III and IV of the complaint, admitting that Stephens was in control of the service station, but denying the remaining allegation in each of said counts.

After appellant had presented his case and rested, respondent moved for a nonsuit on all causes of action. The motion was granted, and this appeal followed.

The questions presented upon this appeal are (1) whether Stephens was at the time of the accident the agent or employee of Milligan, (2) whether a partnership existed between Milligan and Stephens, and (3) whether Milligan was in sole possession and control of the premises.

As stated in *Robinson* v. *George*, 16 Cal.2d 238, 241 [105 P.2d 914]: "In reviewing a judgment of nonsuit, it must always be borne in mind that a court can grant a nonsuit only when, disregarding conflicting evidence and giving plaintiff's evidence all of the value to which it is legally entitled, including every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such a verdict were given. (Citing cases.)"

In the light of these rules, we shall consider plaintiff's case.

The evidence shows that Stephens was in possession of the premises under an oral agreement. However, Stephens testified that Milligan promised him a written agreement, but wanted him to first try out the station and then they would contract; that he rented it for two months before he asked Milligan for a contract; that Milligan was the distributor for the Norwalk people in that area and that Stephens had to buy his gasoline and oil from Milligan; that Milligan owned the station; that when they made the "deal," as he called it, Milligan figured the gasoline out and showed him what the gasoline cost him and what he could sell it for, that he would make a profit for his work, that Milligan would make a profit on the gasoline and oil which he sold to Stephens and that would be the rent, and "that way he didn't have to pay any rent on the place, that was the deal"; that he agreed upon a price he would pay Milligan for the gasoline delivered to him; that what he sold it for was his own business; that at the time he was questioned about "this affair which was within two weeks after the accident," he made and signed the following statement: "I have no written agreement with Ekonomy Oil Company, I have a verbal agreement with Ekonomy Oil Company, that is, A. B. Milligan, that I am to buy my

gasoline and three kinds of oil that he handles. Any other accessories that I may choose to handle I can buy where I please. I pay no rent for the service station property at Brown and Midway in Durham. The only consideration for my use of the above service station property is that I buy my gasoline and the oil Mr. Milligan sells from him. I pay Mr. Milligan for the products he delivers to me and sell to my customers, I buy at the dealer price. If I give credit to any of my customers that is on my own. It is none of Mr. Milligan's business what I do or how I sell. Mr. Milligan exercises no supervision over my station''; that he did not share his profits with Milligan; that Milligan never paid him any salary of any kind, nor did he ever file any partnership income tax; that Milligan visited the station from time to time and made suggestions, but never actually ordered him ''around'' or told him ''to do this or that'' or he would fire him; that he tried to do everything Milligan wanted him to do in order to get along with him because he knew if he did not go by Milligan's suggestions he would be put out; that he wanted a contract so that he could run the service station as he wanted to; that one of the considerations for Milligan *leasing* (emphasis added) the property to him was that he was to keep open seven days a week; that he paid the sales tax on candy, soda pop, tires and things like that, and that the sales tax on the gasoline which Milligan sold him was probably paid by Milligan and included in the purchase price; that a seller's permit was issued to him personally by the State Board of Equalization; that he bought all the grease guns and everything off of Milligan and that Milligan sold him the equipment but agreed that if he ever gave up the station he, Milligan, would buy it back; that Milligan advertised the gasoline (presumably the brand which he carried) in order to stimulate the sales in all the stations which he owned. It also appears that Milligan had a key to the premises during the entire time that Stephens operated the service station. However, there is no evidence in the record that Milligan used this key other than to let Stephens into the service station when he, Stephens, had locked himself out.

Respondent Milligan testified that he was in the petroleum business; that he owned four service stations, one in Durham and three in Chico; that prior to May 3, 1956, Stephens came to his office to see about taking over the service station in Durham, and that he took it over; that Stephens did not operate

it for him, but operated it for himself; that although he owned the station he had no interest in Stephen's business; that he was the exclusive dealer for Norwalk petroleum products for that district; that he made a profit per gallon of gasoline sold as a broker; that before Stephens took over the service station it was agreed that Stephens was to sell his gasoline and oil and pay no rent; that he presented a written agreement to Stephens, but Stephens did not want it; that the more gasoline Stephens was able to sell the more money he, Milligan, as a broker would make; that he was not in control of the service station so far as the "policies were concerned"; that he had a policy of insurance as an owner and operator to cover the times when he operated the station himself. As to what Milligan was to receive from Stephens for the use of the premises, we quote from the record: "Q. So now . . . yesterday as I understood it you didn't testify that the profits that you made as a distributor . . . or broker as you put it, that that was rent on the premises. A. It was my entire income on everything. Q. But that wasn't rent that you charged on the premises, was it? A. No, that was profit on the merchandise. . . . In fact, that would take in everything. . . . Q. It is just a profit? A. If you have a certain investment you have to get a certain amount of money out of it and they would have to sell that much products through the place. Q. It is an allowance on your premises? A. Yes, to take care of your overhead on the premises and your cost of operating it, it is good business." Respondent also testified that he had agreed to furnish and maintain the pumps, hoist, compressor, one 60 gallon kerosene tank, one 62 gallon portable tank, or whatever tank he had, four 30 gallon Hi Boy lube tanks, and the service station building, anything that he owned. However, he did not agree to maintain anything that Stephens owned.

Appellant contends first that the evidence was sufficient to support a finding that an employer-employee relationship existed between Milligan and Stephens, and, therefore, the court erred in granting the nonsuit. We do not agree. The testimony is undisputed that Stephens was in possession of the premises under an oral agreement. There is not a scintilla of evidence that Stephens considered himself an employee of Milligan. Nor is the evidence sufficient to warrant such a presumption. As we view Stephens' testimony, he was a tenant from month to month expecting to get a lease for a definite period of time. While Milligan made suggestions from time to time as to what should be done, such as keeping the

restrooms clean and other helpful suggestions, there is no evidence that he actually supervised Stephens. The fact that Stephens stated, "Well, I knowed if I didn't go by his suggestions he would put me out," does not mean that Milligan had the right to "fire" Stephens as contended by appellant. Putting him out or terminating the occupancy of the premises is entirely different than terminating an employment. There is nothing in the oral agreement by which Milligan retained the right to control and direct the mode or manner in which the work of operating the station was done. Nor does it appear that Milligan exercised a particular control over the details of Stephen's work. The requirement that the service station should be kept open for seven days a week was part of the consideration for the agreement. It does not appear herein that Milligan possessed the right to control Stephens' work, which is essential to an employer-employee relationship. (*Robinson* v. *George, supra*.) The making of suggestions and the right to order the doing of certain work are entirely different matters.

Appellant contends next that there is evidence of a partnership. To the contrary, we find no evidence of a partnership relationship existing between Stephens and Milligan. Stephens did not share his profits in the operation of the service station business with Milligan, nor did Milligan share the profits which he received as a broker or distributor from the oil and gasoline which he sold to Stephens. They were two different profits entirely. Nor is there any evidence that they were coowners of the business. A partnership is an association of two or more persons to carry on as coowners a business for profit. (Corp. Code, § 15006, subd. (1).)

Lastly, we find no evidence in the record to support respondent's contention that Milligan was the operator of the station. What we have already stated is equally applicable to this contention.

The judgment appealed from is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.