[Sac. No. 7659.   In Bank.   Dec. 20, 1965.]

ROGERS MATERIALS COMPANY, Petitioner, v. INDUS-
    TRIAL   ACCIDENT   COMMISSION   and   ROGER  L.
    DRAKE, Respondents.

Mullen & Filippi and William J. O'Neil, Jr., for Petitioner.

Everett A. Corten and Rupert A. Pedrin for Respondents.

MOSK, J.—Roger L. Drake, who was employed as the driver of a concrete mixer truck by Rogers Materials Company (hereinafter called the employer) was injured while washing cement dust off the mixer drum of the truck. He filed a claim with the Industrial Accident Commission, alleg-

ing that the accident was the result of the serious and wilful misconduct of the employer. The commission found in his favor and awarded him the additional compensation authorized by section 4553 of the Labor Code, which provides that where an employee is injured by the serious and wilful misconduct of the employer or his representative, the amount of compensation shall be increased one-half.[1] The employer seeks to annul the award. As a result we must here determine whether a finding by the referee that the employer *permitted* Drake to be in a position of known and obvious danger, without taking any precautions for his safety, is sufficient to support a conclusion that the employer was guilty of serious and wilful misconduct.

The accident occurred while Drake was standing on a small platform located behind the truck cab. Between the platform and the concrete mixer drum there was a moving sprocket and drive chain which rotated the drum. The drum was turning as Drake, holding a hose in one hand and a brush in the other, leaned toward it in order to wash off the excess cement. His trouser leg, which was only about a foot from the moving chain as he stood on the platform, was caught by the chain and he was thrown off balance, suffering injuries to his back and left leg.

Photographs of the truck were introduced into evidence at the hearing, and they show that the platform on which Drake was standing when he was injured is located in a small space between the rear of the truck cab and the closed end of the mixer drum. A metal ladder about a foot wide extends upward from the truck bed to a point about halfway up the side of a metal frame, and the narrow, horizontal platform connects the top of the ladder to the frame. The power unit which rotates the drum is located at the base of the truck bed. The lower sprocket of this unit is guarded, but the guard ends below the plaform. When the drum is revolving the drive chain moves in an upward direction around the

---

[1] Section 4553 of the Labor Code provides: "The amount of compensation otherwise recoverable shall be increased one-half where the employee is injured by reason of the serious and wilful misconduct of any of the following: (a) The employer, or his managing representative. (b) If the employer is a partnership, on the part of one of the partners or a managing representative or general superintendent thereof. (c) If the employer is a corporation, on the part of an executive, managing officer, or general superintendent thereof. But such increase of award shall in no event exceed seven thousand five hundred dollars ($7,500); together with costs and expenses incident to procurement of such award, not to exceed two hundred fifty dollars ($250)."

large sprocket on the drum. With use, the unguarded upper chain has a tendency to stretch and flap. It is evident from the photographs that if a person is washing the drum from the platform, he must lean toward the drum and over the unguarded chain, and that the leg of such person would be relatively close to the chain.

Drake had been driving the employer's mixer truck for only about a month when the accident occurred, but he had three years' experience as a concrete mixer driver. He testified as follows: he always cleaned the mixer drum while it was revolving and, although it was possible to wash the drum when it was stationary, this would cause the excess cement inside to harden and he would be required to go inside the barrel and chip off the hardened cement with a hammer. He had not been given any instructions about the manner of washing the drum and Lowry, the superintendent on the job, had seen him on the platform while the drum was rotating. He had conversations with Lowry from the platform while cleaning the rotating drum, and Lowry at no time instructed him to get off the platform. Concrete mixer trucks which he had driven before had guards over the moving chain at the platform level.

According to Lowry's testimony, when Drake had come to work a month prior to the accident, Lowry told him never to get on the platform for the purpose of washing the drum while it was in motion. Drake denied that these instructions had been given. Lowry stated further that he had told Drake to wash the drum by cleaning one side first, getting off the platform, turning the drum over, and then cleaning the other side. He had seen Drake on the platform while the drum was turning and Drake was filling a water tank located above the platform, and had told him to be careful.

The referee found that the injury was proximately caused by the serious and wilful misconduct of the employer "in *requiring and permitting* the applicant to be in a position of known and obvious danger, without taking any precautions for his safety, and in failing to provide and use a guard over and about a certain chain and sprocket reasonably adequate to render safe applicant's employment in proximity thereto." (Italics added.) In a "discussion" appended to the finding and award, the referee stated: "The moving chain was about one foot from his [Drake's] leg and was loose and flapping. The danger of his clothing getting caught in the chain must have been obvious to anyone who observed

him. That it was obvious to Howard Lowry, the batch plant superintendent, is established by his own testimony. He testified that on the day the applicant first came to work he instructed him not to go on the platform when the mixer was turning, and that thereafter he saw the applicant on the platform on occasions when the mixer was turning and on those occasions told him to be careful. It is clear that the superintendent had 'put his mind to the danger' involved in cleaning the truck from the platform when the barrel was turning. In permitting the applicant to be in this known place of danger he was guilty of serious and wilful misconduct within the meaning of Labor Code Section 4553.''

The employer asserts that the evidence does not support the findings of fact and that the findings do not justify the award. It is argued that the finding of serious and wilful misconduct may not be based on evidence that the employer knowingly *permitted* Drake to be in a position of obvious danger, i.e., that the employer cannot be found guiilty of wilful misconduct even if it knew that Drake was working in a dangerous manner and took no steps to stop him from doing so or to provide safety devices to permit the work to be done safely in that manner. For the reasons hereinafter stated, we do not agree with this contention. In view of this conclusion, it will not be necessary to consider the employer's further claim that the evidence does not support the commission's finding that Drake was *required* to be in a position of danger in performing his work.

Under rules of construction by which we are bound, findings of the commission must be liberally interpreted in favor of sustaining an award and even if the findings are inadequate for uncertainty, they will be upheld if they can be made certain by reference to the record. Moreover, conflicts in the evidence must be resolved in favor of the findings of the commission, and if there is any evidence in their support, findings will not be disturbed on appeal.

The issue as to what elements must be present to constitute wilful misconduct is, however, one of law. (*Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 114-115, 123-124 [251 P.2d 955].)

The leading authority on these essential factual elements is the case of *Mercer-Fraser Co.* v. *Industrial Acc. Com., supra. Mercer* and its progeny discussed hereinafter make it clear that it is not necessary, in order to support a finding of serious and wilful misconduct that an employer perform a

positive act which endangers his employees but, on the contrary, a finding that he is guilty of wilful misconduct may be based on evidence that he deliberately failed to act for the safety of his employees, knowing that his failure would probably result in injury to them. In *Mercer* we stated that, if the commission had found that the employer's representative had deliberately, knowingly and intentionally *failed* to sufficiently brace the building involved therein and had "turned his mind" to the fact that if it failed to do so the building would probably collapse, a determination that the employer was guilty of serious and wilful misconduct would have been justified. (40 Cal.2d at pp. 120-121, 124-125.) We concluded, however, that the commission did not make such findings, and its increased award on the basis of serious and wilful misconduct was annulled on that ground.

In analyzing the meaning of the term "wilful misconduct" in section 4553, we considered the definition of that term in decisions involving the application of other statutes adopting that expression. The opinion states (40 Cal.2d at p. 117), " 'Wilful misconduct . . . necessarily involves deliberate, intentional, or wanton conduct in doing or *omitting to perform acts,* with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom . . . there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury.' " (Italics added.) The employer relies upon other portions of the opinion in which wilful misconduct is defined in terms of positive acts of an employer,[2] but obviously such statements cannot be viewed as restricting a finding of wilful misconduct to a situation where affirmative acts appear, since the *Mercer* case itself involved the failure of an employer to take precautions for the safety of his

---

[2]For example, wilful misconduct is described on page 120 of *Mercer* as "an act deliberately done for the express purpose of injuring another, or intentionally performed either with knowledge that serious injury is a probable result or with a positive, active, wanton, reckless and absolute disregard of its possibly damaging consequences . . . ." The employer also relies on language from *Mercer* to the effect that wilful misconduct involves "conduct of a *quasi* criminal nature" and it is claimed that such conduct cannot be found in the present case. However, the sentence in which this statement is made explains, in effect, that what is meant by the quoted phrase is "the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences." (40 Cal.2d at p. 117.)

employees and, as set forth above, the court determined that such a failure would have justified a finding of wilful misconduct if the other necessary elements were present.

*Mercer* was followed by *Hawaiian Pineapple Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 656 [255 P.2d 431], in which an employee was injured when he failed to stop his truck at a railroad track after the employer had taken certain precautions to avoid such an accident. We annulled an award for wilful misconduct, holding that there was no finding by the commission or substantial evidence in the record that the employer had knowledge of the probable consequences of its failure to provide more adequate safety devices or a safer place to work. In *Keeley* v. *Industrial Acc. Com.* (1961) 55 Cal.2d 261 [10 Cal.Rptr. 636, 359 P.2d 34], we held that, where an employer knowingly orders his employee into a dangerous position and does nothing to protect him from harm, a finding of wilful misconduct is justified. We reiterated that *Mercer* and *Hawaiian Pineapple* determined an employer may be found guilty of wilful misconduct when he has "put his mind" to the existence of a danger to an employee and fails to take precautions to avert it. (55 Cal.2d at pp. 267-269.)

These cases differ factually from each other in that the dangerous act or omission of the employer is not of the same type. The same basic principle is enunciated in all of them, however, that an employer commits wilful misconduct when he "turns his mind" to the fact that injury to his employees will probably result from his acts or omissions, but he nevertheless deliberately fails to take appropriate precautions for their safety. The employer's conduct is measured by this test whether he permits his employees to work by a dangerous method (*Hawaiian Pineapple*), whether he orders them to perform a hazardous job (*Keeley*), or whether they are allowed to work in a building where any work is dangerous (*Mercer*).

In the present case, there is no doubt that the evidence supports the finding of the commission that the employer, through Lowry, its superintendent, knew that Drake was in a position of danger when he washed the revolving drum from the platform. There was testimony that Lowry had warned Drake a month before the accident not to wash the rotating drum from the platform, that he repeatedly saw Drake on the platform while the drum was rotating, and that he merely told Drake to be careful. In addi-

tion, the proximity of the flapping chain to the platform and the fact that a person standing on it to wash the drum would be required to lean close to and over the chain in order to reach the drum, amply support the finding that the dangerous condition was obvious. Thus, the record justifies the conclusion that the employer was aware of the method by which Drake washed the drum, knew that this method was likely to result in injury to Drake in the absence of precautions, and, without taking precautions or forbidding the work to be performed in this manner, either acquiesced in the practice or impliedly consented to it. The fact that Drake was not specifically ordered to wash the drum while it was rotating cannot shield the employer from liability. Under these circumstances, we believe a finding that the employer was guilty of serious and wilful misconduct was justified on the ground that its failure to provide a guard over the chain at the level of the platform or to otherwise protect Drake from harm while he was performing his duties there constitutes a deliberate omission to act, with knowledge or appreciation of the fact that Drake would probably be injured by its omission.

A number of elements are relied on by the employer which, it asserts, rebut the charge of wilful misconduct. There was no appreciation of the danger to which Drake was exposed, it is urged, because the evidence did not show that there were prior incidents to warn Lowry that the chain was a peril to employees working on the platform and there were no complaints regarding the chain. While this type of evidence would be a strong indication of an employer's knowledge of danger to his employees, there is no implication in *Mercer* or any other case that such evidence is the only basis upon which an employer's knowledge may be found.

The employer emphasizes that Lowry had warned Drake to be careful when he saw him on the platform, and that Lowry had told him on one occasion not to wash the moving drum from the platform. There is a statement in *Mercer,* relied upon by the employer, that the fact the superintendent was worried about the condition of the building "would seem to negative, rather than affirm, either an intent to do harm or a wanton, positive and absolute disregard of possible harm." ▮ Whatever may be said regarding the evidence in *Mercer* we have concluded that, under the circumstances here, the evidence and findings justify the conclusion that the employer deliberately failed to take precautions to pro-

tect Drake from an obvious danger, and the mere fact that there is evidence that Lowry was concerned for the safety of Drake does not require a different conclusion.

A claim is also made that the evidence does not support the finding that the employer did not take *any* precautions for Drake's safety. Prime reliance in this regard is based on the fact that there was a guard on the chain *below* the platform level and that an inspector for the Division of Industrial Safety, who had inspected the truck before it was put into operation, did not recommend a guard over the chain at the platform level. Obviously, a guard *below* the platform cannot be held to constitute a precaution for a person working *on* the platform. Moreover, the inspector testified that if a workman was on the platform while the drum was revolving, this would be an unsafe practice and he would have required a guard to be placed over the chain at the level of the platform.

Finally, the employer contends that the award violates Labor Code section 4553.1. The section provides that, in order to support a holding of serious and wilful misconduct by an employer *based upon violation of a safety order,* the commission must make certain specific findings, including a finding that the order was known to the employer or his representative. In the present case the commission did not rely on the employer's violation of a specific safety order as the basis for its finding of wilful misconduct, but on the general duty of an employer to provide a safe place to work and on the principles set forth in the authorities discussed above. Nevertheless, asserts the employer, a safety order requiring the guarding of chains within 7 feet of a working level was introduced into evidence at the hearing, the evidence shows as a matter of law that this order was violated, and the employer's representative testified that he was not aware of the order. Under these circumstances, it is claimed, the findings required by section 4553.1 must be made if wilful misconduct is found, and the commission cannot avoid its duty to comply with the section by finding that the employer was guilty of wilful misconduct under general rules of law.

The employer relies on the case of *Wolters* v. *Industrial Acc. Com.* (1963) 223 Cal.App.2d 136 [35 Cal.Rptr. 549]. There the commission found the employer guilty of wilful misconduct on the basis of a safety order violation and under the general principles set forth in *Mercer.* The court sus-

tained the determination insofar as it was based on the safety order violation, but stated that it was improper for the commission to conclude that the same conduct which justified this finding could also constitute wilful misconduct under general rules of law. It was said as to the latter, "The commission here finds the employer guilty of conduct violating a safety order but omits any mention of the order. Simply through silence, the commission fastens on the employer liability for safety order violation without reference to the order itself or to the requirements of Labor Code section 4553.1. If permitted, this procedure would impose liability in defiance of the specific demands of section 4553.1." (*Id.* at pp. 145-146.)

Even if we were to agree that the present case indicates a safety order violation as a matter of law and that it was properly established that the requirements of section 4553.1 were not satisfied, we cannot accept the employer's contention that the finding of wilful misconduct was improper. Any other conclusion would mean that, no matter how culpable an employer's conduct may be, he cannot be found guilty of wilful misconduct simply because his act or omission coincided with his violation of a safety order of which he had no prior knowledge.

Although the statement in *Wolters* quoted above may be subject to the broad interpretation suggested by the employer, it is clear that the court did not intend its language to be construed in this manner. In *Dowden* v. *Industrial Acc. Com.* (1963) 223 Cal.App.2d 124 [35 Cal.Rptr. 541], decided by the same court on the same day as *Wolters,* it was held that while the evidence would not support an award for serious and wilful misconduct under section 4553.1 because there was no showing that the employer knew of the existence of the safety order which he violated, there was evidence from which the commission could have found that the employer's failure to take precautions rendered him guilty of wilful misconduct under the general principles of law set forth in *Mercer.* These cases would obviously be in direct conflict if *Wolters* were to be interpreted in the parochial manner suggested by the employer. ■ In order to avoid confusion, therefore, the language in *Wolters* quoted above is disapproved insofar as it can be interpreted to mean that a finding of wilful misconduct under general principles of law is improper where the same acts can also be found to constitute wilful misconduct because of the violation of a safety order.

An employer who is aware of the likelihood that his employee will be injured in the performance of his work unless precautions are taken for his safety but deliberately fails to take such precautions, is liable for wilful misconduct. In that connection, we cannot distinguish between the employer who orders the performance of the act which led to the injury, and one who knowingly acquiesces in the dangerous practice. In our view, such a distinction is both unwarranted and contrary to the authorities discussed above.

The award is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke J., concurred.