[Civ. No. 32557.   Second Dist., Div. Two.   Aug. 22, 1968.]

MARY LOU WHITE, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD AND BETHLEHEM STEEL CORPORATION, Respondents.

Allan F. Grossman for Petitioner.

Everett A. Corten, Sheldon M. Ziff, Howard P. Powers and Ellsworth H. Kendig, Jr., for Respondents.

McCOY, J. pro tem.*—This is a proceeding to review and annul a decision of the Workmen's Compensation Appeals Board, that petitioner take nothing on her application for a supplemental award based on the serious and willful misconduct of the employer of her deceased husband.

On September 10, 1965, while employed by the Bethlehem Steel Corporation in the erection of the steel framework of a multistoried building in the Century City area, Clyde M. White fell to his death from the ninth floor. A stipulated award of death benefits was made based on a finding that he died as the result of injuries arising out of and occurring in

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

the course of his employment. The stipulated award was based on petitioner's application for death benefits under the laws providing for workmen's compensation.

Before the stipulated award was made petitioner also filed an application for an award based on the serious and willful misconduct of her husband's employer as provided in section 4553 of the Labor Code. Following the hearings on this application the referee found that the death "was proximately caused by the serious and willful misconduct of the employer in that Construction Safety Orders 7101, 7104, 7107 (Administrative Code, Title 8, section 1635), known to the General Superintendent of the employer, . . . was [sic]violated by the employer and by its General Superintendent . . ." The referee made an award against the employer in accordance with her findings. On reconsideration, the board vacated the findings and award of the referee, found that the death "was not caused by the serious and wilful misconduct of defendant," and ordered that applicant take nothing by virtue of her application.

The facts which give rise to the issue of serious and willful misconduct are not in dispute. On September 10, 1965, decedent and his work partner, one Martinez, both employees of Bethlehem Steel Corporation as members of the steel construction gang, were engaged in bolting work on the eleventh floor of the building. During the course of construction beams and other heavy pieces were hoisted and moved about by cranes which were "jumped" two floors each time they had to be moved to a higher level. Smaller pieces and equipment were hoisted to working levels by means of a "jerry winch." At the time of the accident the eleventh floor was completely floored and the thirteenth floor was in the process of being floored. The flooring consisted of 2″ x 12″ planks either 20′ or 24′ long placed close together, except that 4′ x 8′ x ¾″ plywood sheets were used in some areas particularly around columns. Construction work on the ninth floor had then been completed, and about half of the flooring on that floor had been removed and stacked in preparation for its being taken to a higher floor later.

Early in the afternoon of September 10 one Turner, Bethlehem's top work foreman on the job, ordered decedent and Martinez to go down from the eleventh floor to the ninth floor to clear or pick up the remaining flooring. When they got there they found two sheets of plywood on the north side of the remaining flooring, one overlapping the other by about a

foot.[1] No hole could be observed underneath the plywood since the area around and partially under the plywood was planked. Having decided to remove this plywood first, each took hold of an end of one sheet and started to lift. As they did so Martinez turned his back on decedent so that they both were facing south. They then started to walk to the stack of plywood somewhat south and east of where they were. After taking one or two steps decedent fell to his death through an opening in the floor about 24 inches wide and from 7 to 12 feet long. This hole was under the two sheets of plywood, which had not been nailed down. There was no marking anywhere to indicate that the plywood should not be moved or that there was any floor opening beneath them. Admittedly none of the floors below the ninth floor were planked or otherwise floored.

The opinion and decision of the board after reconsideration read in part: "It appears that, deceased, a journeyman ironworker, was engaged in removing planking from the ninth floor to take it to a higher floor, when he fell through a hole created by the removal of a sheet of plywood, to his death on the ground level.

"There were no plank floors below the ninth floor. Applicant contended that this was a violation of Labor Code sections 7104 and 7107 and of the Orders of the Division of the Industrial Safety based thereon.

"Defendant contended that the custom and practice in the industry statewide was not to have as many planked floors as called for by these regulations and that this custom was known to and approved by the inspectors of the Division of Industrial Safety as being in substantial compliance with the safety regulations. It appears that usually only the derrick floor and the floor two below it from which the derrick has been jumped are consistently planked and that when the derrick is again jumped two floors up, the planking now four floors below it is removed and stored ready to build a new derrick floor. It is this removal that decedent was engaged in at the time of his fall.

"It appears that the intended beneficiaries of these regula-

---

[1]When work on the ninth floor had been completed the "jerry winch" which had been fastened to an outside beam and an inside floor beam, was moved to an upper level. The two pieces of plywood which decedent and Martinez were going to move were used to cover the opening left in the decking on the removal of the "jerry winch." The decking on floors below the ninth story had already been removed as the work had progressed.

tions are those ironworkers in the erection gang working on and above the derrick floor and those who are welding and bolting members two floors below the derrick.

"We do not find in the practice of defendant employer, condoned by safety experts, any positive or reckless disregard of possible consequences of harm; nor do we find present the element of the employer having turned his mind to the fact of a known hazard and callously permitting it to exist. We do not find that this unfortunate accident was caused by the serious and wilful misconduct of the defendant employer."

The uncontradicted evidence shows that the employer and its general superintendent on the job had knowledge of the safety orders here involved, and the referee so found.

Petitioner contends that the evidence compels a finding that the employer violated Labor Code, sections 7101, 7104 and 7107, and specific findings in her favor of the five facts which must be established to support a holding of serious and willful misconduct by an employer based upon violation of a safety order as set forth in the Labor Code, section 4453.1; that the safety provisions shown to have been violated are state laws enacted to carry out the legislative intention that workmen working at great heights on high rise steel construction shall be protected from fatal falls in the course of this ultra-hazardous work; that the statutes are for the protection of each workman working on such buildings whether he is bolting steel girders, laying floors, or picking up flooring; that the violation of these safety provisions is so patently a reckless disregard of the safety of an employee as to constitute serious and willful misconduct; and an employer may not excuse the violation of a safety order by substituting his own judgment of safety for the standard set by law. She contends, in short, that there is no evidence to sustain the finding of the board that the death was not caused by the serious and willful misconduct of the employer.

In response to petitioner's contentions, the appeals board in its answer asserts that it found, in effect, that the employer in good faith believed that the situation was not a dangerous one and that the evidence failed to establish that the employer "turned his mind to the fact of a known hazard"; and that the safety orders do not clearly impose any duty upon the employer to provide flooring other than that on which the employee was standing just before he fell. The employer argues that its superintendent testified that he thought he was complying with the requirements of the regulations and that

he thought it was safe; and that the Department of Industrial Safety approved of the practice of the employer.

Section 4553 of the Labor Code provides, so far as relevant here, ''The amount of compensation otherwise recoverable shall be increased by one-half where the employee is injured by reason of the serious and wilful misconduct of any of the following: . . . (c) If the employer is a corporation, on the part of an executive, managing officer, or general superintendent thereof.'' The meaning of ''serious and wilful misconduct'' as here used has been considered extensively in a number of recent cases.

''Whether in any given case serious and wilful misconduct is shown, inherently presents questions of both fact and law. Insofar as the issues may relate to the credibility of witnesses, the persuasiveness or weight of the evidence and the resolving of conflicting inferences, the questions are of fact. But as to what minimum factual elements must be proven in order to constitute serious and wilful misconduct, and the sufficiency of the evidence to that end, the questions are of law.'' (*Mercer-Fraser Co.* v. *Industrial Acc. Com.*, 40 Cal.2d 102, 115 [251 P.2d 955].) In the same case (p. 120) the court stated the true rule to be ''that serious and wilful misconduct is basically the antithesis of negligence, and that the two types of behavior are mutually exclusive; an act which is merely negligent and consequently devoid of either an intention to do harm or of knowledge or appreciation of the fact that danger is likely to result therefrom cannot at the same time constitute wilful misconduct; conversely an act deliberately done for the express purpose of injuring another, or intentionally performed either with knowledge that serious injury is a probable result or with a positive, active, wanton, reckless and absolute disregard of its possibly damaging consequences, cannot properly be classed as the less culpable conduct which is termed negligence. It follows that a finding of serious and wilful misconduct cannot be sustained upon proof of mere negligence of any degree.''

The matter was again considered in *Rogers Materials Co.* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 717, where the court said (pp. 721-722 [48 Cal.Rptr. 129, 408 P.2d 737]) that *Mercer* and its progeny ''make it clear that it is not necessary, in order to support a finding of serious and wilful misconduct that an employer perform a positive act which endangers his employees but, on the contrary, a finding that he is guilty of wilful misconduct may be based on evidence that he deliberately failed to act for the safety of his employees, knowing

that his failure would probably result in injury to them."
Then, after noting the decisions in *Hawaiian Pineapple Co.* v.
*Industrial Acc. Com.*, 40 Cal.2d 656 [255 P.2d 431], and *Keeley* v. *Industrial Acc. Com.*, 55 Cal.2d 261, the court said (p.
723 [10 Cal.Rptr. 636, 359 P.2d 34]) : "These cases differ
factually from each other in that the dangerous act or omission of the employer is not of the same type. The same basic
principle is enunciated in all of them, however, that an employer commits wilful misconduct when he 'turns his mind'
to the fact that injury to his employees will probably result
from his acts or omissions, but he nevertheless deliberately
fails to take appropriate precautions for their safety. The
employer's conduct is measured by this test whether he permits his employees to work by a dangerous method (*Hawaiian Pineapple*), whether he orders them to perform a hazardous
job (*Keeley*), or whether they are allowed to work in a building where any work is dangerous (*Mercer*)."

In the present case petitioner's application for increased benefits under section 4553 is based on the alleged
violation of certain safety orders by Bethlehem and its
general superintendent. Those safety orders are found in sections 7101, 7104, and 7107 of the Labor Code, which read as
follows : "§ 7101. Every building shall have the joists, beams,
or girders of floors below the floor or level where any work is
being done, or about to be done, covered with flooring laid
close together, or with other suitable material to protect workmen engaged in such building from falling through joists or
girders, and from falling substances, whereby life or safety is
endangered." "§ 7104. If a building has a structural frame
of iron or steel, the entire floor of every second story, except
such space as may reasonably be required for the proper construction of such building, shall be thoroughly covered with
planks tightly laid together, so that workmen have at all times
planked floors within two stories below them." "§ 7107. The
erection gang on a building shall at all times have a planked
floor below them not more than two stories distant."[2] Section
7115 provides that the Division of Industrial Safety shall enforce the foregoing sections.

Section 4553.1 of the Labor Code, which was added in 1959
after the decision in *Mercer* in 1953 is also pertinent here.
That section reads : "In order to support a holding of serious
and willful misconduct by an employer based upon violation

---

[2]These provisions of the Labor Code are incorporated in Administrative
Code, title 8, article 20, section 1635.

of a safety order, the appeals board must specifically find: (1) That the safety order was established as having been known to a particular identified and named person or persons, either the employer or a representative of the employer designated by Section 4553; (2) That the violation was established to have been committed by a particular identified and named person or persons, either the employer or a representative of the employer designated by Section 4553; (3) That the condition making the safety order applicable at the time of the injury or death was established to have been known to a particular identified and named person or persons, either the employer or a representative of the employer designated by Section 4553; (4) The specific manner in which the order was violated; and (5) That the violation of such safety order did proximately cause the injury or death, and the specific manner in which the violation constituted such proximate cause.''

The effect of the violation of a specific statute or safety order depends on the subject and nature of the regulation. In *Grason Elec. Co.* v. *Industrial Acc. Com.*, 238 Cal.App.2d 46 [47 Cal.Rptr. 439], the employer violated a known safety order which required that when working with equipment under conditions where it was possible to come within 6 feet of high voltage lines certain specified precautions be taken. The foreman, believing that a different method was safe, directed the employee to act accordingly and the employee was electrocuted when the equipment came too close to the power lines. The method violated the safety order. The order regulated conduct in an area where the occupational hazard involved was a deadly peril. The court said (pp. 52-53, 54, 55) : ''The minimum level of care demanded of the employer must be somewhat elevated in the presence of known safety regulations dealing with progressively acute hazards. The demand for compliance grows more imperious as the peril intensifies. The employer who ignores a regulation against roller towels in the washroom may be merely negligent. The same inattention to a regulation dealing with lethal danger may amount to serious and wilful misconduct. . . . The safety order imposed stringencies proportionate to the danger. As loudly and powerfully as words can, it expressed an authoritative and inflexible social policy regarding this ultra-hazardous activity. The policy prohibited the employer from taking the slightest gamble with his employee's safety. The prohibition was all the more strenuous because the stakes were so high. Not freedom from injury, but life itself, was at stake. . . . Culpability lies in the foreman's decision that the

activity was safe notwithstanding violation of the safety order. He took it upon himself to match his own judgment (such as it was) against the emphatic policy decreed by law and safety regulation. He deliberately took the gamble forbidden by law. The law should measure its penalty by the deliberation with which the gamble was taken, not the deliberation with which it was lost. Viewed in relation to acute danger and an inflexible legal demand, the decision was characterized by positive and reckless disregard of its possible consequences.'' A petition for hearing in *Grason* was denied by the Supreme Court.

As we read the safety regulations involved here (Lab. Code, §§ 7101, 7104, 7107), they compel the conclusion that all workmen working at high levels are to be protected by a planked flooring not more than two stories below them. Section 7104 provides that ''the entire floor of every second story . . . shall be thoroughly covered with planks tightly laid together so that workmen have at all times planked floors with two stories below them.'' Section 7107 is equally emphatic—it reads: ''The erection gang on a building shall at all times have a planked floor below them not more than two stories distant.'' These regulations brook no exceptions. Section 7115 of the Labor Code imposes on the Division of Industrial Safety the duty to enforce these safety regulations. This means that it must enforce them as they are written, and not as they may be interpreted by those to whom they apply. Certainly, neither the division of Industrial Safety, nor the Appeals Board has authority to approve or condone any deviation based on the custom of the employer or the custom of those engaged in constructing steel frame buildings.

Both the defendant Bethlehem and the board contend that the safety orders are ambiguous and, in effect, that the interpretation given them by Bethlehem and the board was reasonable and should be sustained. This contention, as stated by Bethlehem in its answer to the petition before us, is this: ''Each of these Safety Orders is subject to the same duplicity of meaning, that is, they can be construed to mean that there must be a fully decked or covered floor two floors below any workman regardless of whether or not he is working on a decked surface which protects him, *or they can mean that where a workman, or the erection gang, is actually standing on the floor while working, the floor, which is directly under his feet is that protective floor called for by the Safety Orders*. The ambiguity is most patent in Safety Order 7104.

Had it been the legislative intent to require every second story of a building with a structural frame of iron or steel to be thoroughly planked they would have left off the part of the Order which states: ',—so that workmen have at all times planked floors within two stories below them.' " To state the contention is to refute it. To say that the floor on which a workman is actually standing is the protective floor two stories below him, called for by the safety orders, is meretricious. We find no ambiguity in the provisions of safety orders involved here.

The decedent was an ironworker and a member of the erection gang. Although the work decedent was doing was that of a laborer, laborers could not be found to work at the height and it was necessary for the erection workers themselves to do all the work at that level. It is conceded that the employer's general superintendent knew of the safety orders, knew of the condition of the building making the orders applicable, and authorized the foreman to carry out the removal of the planking in the manner stated. The referee found that the evidence established all the criteria for an award for serious and willful misconduct set forth in section 4553.1 of the Labor Code.

In its opinion on reconsideration the board said that "it appears that the intended beneficiaries of these [safety] regulations are those ironworkers in the erection gang working on and above the derrick floor and those who are welding and bolting on the two floors below the derrick." This interpretation of the statute is not tenable. Sections 7101 and 7104 by their terms include *all* "workmen" as beneficiaries. Section 7107 includes all members of the "erection gang" as beneficiaries, regardless of where they are working or what they are doing in relation to the construction of the steel frame of the building. In vacating the referee's findings and award the board also misinterpreted those sections as permitting a departure from their strict requirements in accordance with the custom of the construction industry, at least when condoned by the Division of Industrial Safety. As we have pointed out, no such deviation is permissible.

We have already set forth the rules which must govern our decision as stated in *Rogers Materials Co.* v. *Industrial Acc. Com., supra,* 63 Cal.2d 717. The court there held "that an employer commits willful misconduct when he 'turns his mind' to the fact that injury to his employees will probably result from his acts or omissions, but he nevertheless deliberately fails to take appropriate precautions for their safety." As we read the record the evidence clearly sustains

the findings of the referee that this element of serious and willful misconduct of the employer had been established. In vacating the findings and award of the referee the board said: "We do not find in the practice of defendant employer, condoned by safety experts, any positive or reckless disregard of possible consequences of harm; nor do we find present the element of the employer having turned his mind to the fact of a known hazard and callously permitting it to exist."

Apart from the board's evident misinterpretation of the safety regulations, its opinion is significantly devoid of any statement of the evidence relied upon and of any statement of the reasons for its ultimate decision. The decision thus fails to comply with section 5908.5 of the Labor Code. (*Evans* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 753 [68 Cal.Rptr. 825, 441 P.2d 663].)

"An employer," said the court in *Rogers Materials Co.* v. *Industrial Acc. Com.*, *supra*, 63 Cal.2d at p. 727, "who is aware of the likelihood that his employee will be injured in the performance of his work unless precautions are taken for his safety but deliberately fails to take such precautions, is liable for wilful misconduct. In that connection, we cannot distinguish between the employer who orders the performance of the act which led to the injury, and one who knowingly acquiesces in the dangerous practice. In our view, such a distinction is both unwarranted and contrary to the authorities discussed above." That statement is particularly apposite to the case before us.

The decision of the board here under review is annulled and the matter is remanded to the board for further proceedings consistent with the views expressed in this opinion.

Herndon, Acting P. J., concurred.