[Civ. No. 20239. Third Dist. Mar. 17, 1982.]

WINSTON S. WILLIAMS, Plaintiff and Respondent, v.
INTERNATIONAL PAPER COMPANY, Defendant and Appellant.

**COUNSEL**

Tocher, Gazzigli & Fuller, Hanna, Brophy, Maclean, McAleer & Jensen and Michael G. Lowe for Defendant and Appellant.

Chickering & Gregory, John P. Macmeeken and D. Wayne Jeffries as Amici Curiae on behalf of Defendant and Appellant.

Ericksen, Arbuthnot, McCarthy & Kearney, Robert N. Arbuthnot and Bryce C. Anderson for Plaintiff and Respondent.

---

**OPINION**

**SPARKS, J.**—The principal question presented by this appeal is whether an employee may bring a civil action against his employer for injuries caused by the employer's intentional failure to correct hazardous working conditions when it knew that an injurious explosion was substantially certain to occur. We hold that such an action is barred by the "exclusive remedy" limitation of the workers' compensation act (Lab. Code, § 3200 et seq.)

Plaintiff was employed by defendant as a "charge operator" in the "old power house" at its mill facility at Weed. He was severely injured in the course of his employment in a sawdust fire and explosion. He brought suit against his employer seeking general, special and punitive damages.

The theory of his action, as expressed in his third amended complaint, is that "defendant . . . had, in their [sic] capacity as self insurers for Workers' Compensation Insurance, undertaken the duty of inspecting the premises and working conditions . . . [and] during the course of said inspections . . . became aware of numerous and flagrant violations of safety procedures . . . . With intentional, wanton and conscious disregard of the rights and safety of plaintiff, defendants [sic] . . . failed to correct the aforesaid conditions." The case was tried before the jury on a "dual-capacity" theory of liability under which it was claimed that an employer who acts as a self-insurer under the Workers' Compensation Act has a duty of care separate and distinct from that of an ordinary employer. Under plaintiff's theory, a self-insured employer becomes a person "other than an employer" when intentional disregard for safety is involved and can be sued for civil damages over and above the limited amounts allowed by the Workers' Compensation Act.

The jury was instructed they could find for plaintiff only if defendant, "in accordance with its role as self-insurer, acted intentionally in exposing the plaintiff to the hazards . . . ." "Intent" was then defined.[1]

---

[1] "The jury is instructed the word 'intent' denotes that the actor either 1) desires to cause the consequences of his act, or, 2) that he believes that the consequences are sub-

The jury returned a verdict for plaintiff for $800,000 compensatory damages and $25,000 punitive damages. This total amount of $825,000 was reduced to $704,726.02 due to credit given to defendant for payments to plaintiff under the Workers' Compensation Act. This appeal followed.

Throughout the proceedings, in arguments on various motions, including summary judgment, nonsuit and directed verdict, defendant consistently took the position that the "exclusive remedy" provisions of the Workers' Compensation Act were applicable, i.e., that no liability in tort existed on the part of defendant because of Labor Code sections 3600 and 3601. Defendant contended it could not be considered, simply because of its self-insured status, a "person other than the employer," within the meaning of Labor Code section 3852, so as to avoid the restrictions of sections 3600 and 3601. The trial court, however, denied all its motions for reasons epitomized in its remarks concerning the motion for nonsuit: "Well, I think what you're saying is in every case where the person is self-insured that any intentional act or any act that would amount to intentional act, they can be served in a dual-capacity.... [¶] I recognize that it may be forcefully argued that there were duties that they [defendant] were carrying out were also duties as an employer—employee, but I do think that by reason of the fact that they were acting in dual-capacity as workmen's compensation carrier that perhaps they had a higher duty of care."

## I. STATUS OF SELF-INSURED EMPLOYER

■ The trial court's reservations in so ruling were justified since its rulings were erroneously based on the concept that a different or greater standard of care (or a greater or different liability) should be imposed on an employer who acts as a self-insurer than would be the case if the employer engaged an independent carrier to supply the workers' compensation. Plaintiff, and the trial court, analogized the situation in this case to that in *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 629-631 [102 Cal.Rptr. 815, 498 P.2d 1063]. There it was alleged that an *independent* workers' compensation carrier hired a Lothario to date the injured female applicant and to entice her fraudulently to engage in harmful physical activities, covertly filmed, which

---

stantially certain to result from it.

"Intent is not limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."

aggravated her industrial injury. As the high court later explained in *Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465, 476 [165 Cal.Rptr. 858, 612 P.2d 948], "[i]n *Unruh* ... we held that the immunity from common law liability was lost insofar as the insurer did not 'remain in its proper role' but, rather, acted deceitfully in investigating the claim." By stepping out of its proper role, the carrier acted in a different capacity, forfeiting its protected status as the alter ego of the employer. Consequently the compensation carrier was deemed to be a "person other than the employer" under Labor Code section 3852 for the purposes of liability over and above the limitations of the Workers' Compensation Act and as such could be held liable for additional damages for its own tortious conduct even though the employer himself was immune. We are aware of nothing in California statutory or case law which would extend this concept of dual capacity to an employer who has no workers' compensation insurance carrier but simply has opted to stand ready to pay any such claims himself. He is still only the employer and has not been transformed into two legal entities where there was but one before. (See Lab. Code, § 3211.)[2]

We hold, therefore, that an employer who is permissibly self-insured for workers' compensation liability does not by that fact become a "person other than the employer" within the meaning of Labor Code section 3852. An employer does not act in a dual capacity (and hence does not become subject to a civil action by his employee) merely by electing to become self-insured. ■ As the Supreme Court recently noted in *Bell v. Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 277 [179 Cal. Rptr. 30, 637 P.2d 266], "The purpose of the [Workers' Compensation] Act was to compensate for losses resulting from the risks to which the fact of employment in the industry exposes the employee. Liability under the Act is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment and because the injury arose out of and in the course of the employment. If the duty flows solely from the employment relationship and the injury 'arises out of' and 'during the course of' that employment, then the recited policy considerations behind the exclusive remedy in workers' compensation mandating that the employer be immune from tort liability have viability. If, however, an additional

---

[2] We note that cases in other states have held that a self-insured employer is not a "third party" against whom an employee can state a cause of action. (See e.g., *Swain v. J.L. Hudson Company* (1975) 60 Mich.App. 364 [230 N.W.2d 433]; *Denman v. Duval Sierrita Corporation* (1976) 27 Ariz.App. 684 [558 P.2d 712].)

concurrent duty flows from an 'extra' employer status or a relationship that is distinct from that of employer-employee and invokes a different set of obligations, then a second capacity arises and the employer status is coincidental. The employer should then be treated as any third party tortfeasor, not immune from a common law tort action. [Citation.]"

By becoming self-insured, the employer simply does not create an "'extra' employer status or a relationship that is distinct from that of employer and employee." (*Ibid.*) The judgment consequently cannot be sustained on a theory of dual capacity.

## II. INTENTIONAL INJURY

■ Plaintiff further argues that the judgment can be upheld under a theory of intentional harm. He argues that this is a case where the employer's "conduct consisted of deliberately operating a dangerous plant, knowing that an explosion was substantially certain to occur and that plaintiff or another employee was substantially certain to be killed or injured." That conduct, he asserts, constitutes an intentional act.

The facts in the record show that defendant's work place at which plaintiff was stationed was indeed dangerous. Some employees referred to it as a "bomb."[3] Although defendant was fully aware of the danger, its only effort to clear up the dusty, explosive conditions, other than semi-annual shutdowns for repairs and cleanups, occurred when a visit from the fire insurance company inspector was imminent. The predictable, if not inevitable, result was a spark-induced explosion. Defendant was badly burned and suffered serious permanent injuries.

Labor Code section 3600 provides that when certain "conditions of compensation" concur an employer is liable for workers' compensation for any injury sustained by his employees arising out of and in the course of the employment. It further provides that this liability is "in lieu of any other liability whatsoever to any person ...." Labor Code section 3601 declares that the right to recover workers' compensation benefit is (with some exceptions not relevant here) "the exclusive remedy for injury or death of an employee against the employer ...." Finally, Labor Code section 4553 mandates that the amount of com-

---

[3]The danger was possible explosion and fire since the area was full of loose sawdust in the air. Metal pieces were frequently sucked into the conveyor system which could cause sparks. Officials of the company were aware of this condition since there had been earlier fires.

pensation otherwise recoverable shall be increased one-half where the employee is injured by the "serious and willful misconduct" of his employer.

Plaintiff contends that an employer is civilly liable for intentionally inflicting injuries upon an employee. Defendant counters by arguing that the provisions of Labor Code section 4553, providing for additional benefits for serious and willful employer misconduct, constitute the sole remedy "where the employee is injured in the first instance as a result of deliberate or intentional failure to assure that the physical environment is safe." We conclude that the decision in *Johns-Manville Products Corp.* v. *Superior Court, supra,* 27 Cal.3d 465, is dispositive and compels our sustaining defendant's contention by holding that plaintiff's injuries are exclusively compensable under Labor Code section 4553.

In *Johns-Manville* a longtime employee filed a civil suit against his employer for damages caused by his asbestos-related illnesses. He alleged, among other things, that his employer knew but concealed that long exposure to asbestos was injurious and yet failed to provide adequate protective devices or a safe place to work.[4] The court noted that "[t]he primary focus of the dispute between the parties centers upon the question whether section 4553 is intended to cover the intentional act of employers which cause employee injuries." (*Id.,* at p. 470; fn. omitted.) It approved the employer's contention ". . . that the term 'serious and willful misconduct' as used in section 4553 has the same meaning as intentional misconduct, and plaintiff may not avoid the bar of section 3601 merely by characterizing defendant's conduct as intentional." (*Id.,* at p. 472.) The court consequently held that ". . . the provisions of section 4553 were designed to penalize intentional misconduct of an employer, and the injuries which result from such acts are compensable under that section." (*Id.,* at p. 473.)

"The reason for the foregoing rule" the court further noted, "seems obvious. It is not uncommon for an employer to 'put his mind' to the existence of a danger to an employee and nevertheless fail to take

---

[4]The employee also alleged that his employer "fraudulently concealed from him, and from doctors retained to treat him, as well as from the state, that he was suffering from a disease caused by ingestion of asbestos, thereby preventing him from receiving treatment for the disease and inducing him to continue to work under hazardous conditions. These allegations were held to be ". . . sufficient to state a cause of action for aggravation of the disease, as distinct from the hazards of the employment which caused him to contract the disease." (*Id.,* at p. 477.)

corrective action. (See, e.g., *Rogers Materials Co. v. Ind. Acc. Com.*, *supra*, 63 Cal.2d 717, 723 [48 Cal.Rptr. 129, 408 P.2d 737].) In many of these cases, the employer does not warn the employee of the risk. Such conduct may be characterized as intentional or even deceitful. Yet if an action at law were allowed as a remedy, many cases cognizable under workers' compensation would also be prosecuted outside that system. The focus of the inquiry in a case involving work-related injury would often be not whether the injury arose out of and in the course of employment, but the state of knowledge of the employer and the employee regarding the dangerous condition which caused the injury. Such a result would undermine the underlying premise upon which the workers' compensation system is based. That system balances the advantage to the employer of immunity from liability at law against the detriment of relatively swift and certain compensation payments. Conversely, while the employee receives expeditious compensation, he surrenders his right to a potentially larger recovery in a common law action for the negligence or willful misconduct of his employer. This balance would be significantly disturbed if we were to hold, as plaintiff urges, that any misconduct of an employer which may be characterized as intentional warrants an action at law for damages. It seems clear that section 4553 is the sole remedy for additional compensation against an employer whose employee is injured in the first instance as the result of a deliberate failure to assure that the physical environment of the work place is safe." (*Id.*, at p. 474.)

Plaintiff's reliance upon *Magliulo v. Superior Court* (1975) 47 Cal. App.3d 760 [121 Cal.Rptr. 621], is unavailing. As the Supreme Court observed in *Johns-Manville*, it is only ". . . where the employer is charged with intentional misconduct which goes beyond his failure to assure that . . . the physical environment of a workplace [is] safe," that some cases, such as *Magliulo*, ". . . have held that the employer may be subject to common law liability." (*Id.*, at p. 475.)

The court further observed that "[w]hile we do not purport to find in them a tidy and consistent rationale, we perceive in *Magliulo, Meyer* [v. *Graphic Arts International Union* (1979) 88 Cal.App.3d 176 (151 Cal.Rptr. 597)] and *Unruh* a trend toward allowing an action at law for injuries suffered in the employment if the employer acts deliberately for the purpose of injuring the employee or if the harm resulting from the intentional misconduct consists of aggravation of an initial work-related injury." (*Id.*, at p. 476.) We agree with the perceptive observation of the commentator who recently concluded that ". . . the rule requiring

that the employer act deliberately for the purpose of injuring the employee would not necessarily warrant an action at law for all intentional torts. For example, acts of gross negligence or recklessness may be categorized as being intentional, yet they are not considered acts intended to injure. They are labeled 'intentional' only because the law implies intent in such conduct. Furthermore, the conduct may still be considered accidental as being a part of the hazards of the work environment, because the resulting injuries were not actually intended or contemplated. Thus, precluding actions at law for those intentional torts committed without a specific intent to injure would be consistent with the traditional policy of relying on workers' compensation to cover 'accidents' on the job. [¶] It seems, therefore, that a worker will be granted an action at law against his employer for injuries falling within workers' compensation if he pleads that the injuries sustained were deliberately and willfully inflicted by the employer. If the employee is unable to prove specific intent to injure, he will be precluded from receiving damages and will have to resort to workers' compensation as his only remedy." (Tomita, *The Exclusive Remedy of Workers' Compensation for Intentional Torts of the Employer: Johns-Manville Products* v. *Superior Court* (1981) 18 Cal. Western L.Rev. 27, 45-46, fns. omitted.) Here plaintiff neither alleged nor proved that his employer acted deliberately with the specific intent to injure him.

The employer's intentional misconduct consequently did not go beyond its knowing failure to assure that the mill facility was a safe workplace. That misconduct was therefore exclusively compensable under the workers' compensation laws.

The judgment is reversed and the cause remanded to the trial court with directions to dismiss the complaint.

Blease, Acting P. J., and Carr, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 12, 1982. Bird, C. J., was of the opinion that the petition should be granted.