[No. B002943. Second Dist., Div. Four. Sept. 26, 1984.]

JEAN ROBERTS, Plaintiff and Appellant, v.
PUP 'N' TACO DRIVEUP, Defendant and Respondent.

## COUNSEL

Smithers & Ostrin and Robert A. Ostrin for Plaintiff and Appellant.

Contos & Bunch, Bruce M. Bunch and Douglas J. Tondo for Defendant and Respondent.

## OPINION

ARGUELLES, J.—Jean Roberts, plaintiff in a wrongful death action, appeals the order of dismissal following the sustaining of a demurrer to her first amended complaint without leave to amend. We affirm.

### FACTS

Jean Roberts filed a complaint for damages for wrongful death on November 19, 1982, against defendant Pup 'N' Taco Driveup for the death of her son (hereafter decedent). The complaint alleged, among other things, that at approximately 12:15 a.m. on November 22, 1981, while employed by defendant at 990 North Western Avenue, Hollywood, California, decedent suffered severe injuries; that defendant, its agents or employees, *negligently* failed to summon medical assistance in a timely manner for decedent; and that as a proximate result of defendant's negligence decedent died on November 22, 1981.

On March 25, 1983, defendant filed a demurrer to the complaint on the ground that the court lacked subject matter jurisdiction because the matter was within the exclusive jurisdiction of the workers' compensation laws. (Lab. Code, § 3600 et seq.)[1] No opposition having been made, the demurrer was sustained with 30 days leave to amend the complaint.

Within the 30 days leave period, plaintiff filed her first amended complaint, omitting all references to negligence and alleging, among other things, as follows:

"8. On or about November 22, 1981, at or before 12:05 A.M., the decedent, VINCENT ROBERTS, also known as VINCENT GOGUE, while employed by defendant, PUP 'N' TACO DRIVEUP, at 990 Northwestern [*sic*] Avenue, Hollywood, California, suffered severe injuries as a result of a gunshot wound to the head during a robbery on said premises. At the time of the occurrence herein alleged, the only other employee of defendant, PUP 'N' TACO DRIVEUP, present was GLORIA LANDAVERDE, a female Latin.

"9. At all times herein mentioned, defendant, PUP 'N' TACO DRIVEUP, its officers, managers and agents knew that said GLORIA LANDAVERDE was an illegal alien, but hired said employee and permitted her to continue in their employ despite said knowledge. The employment of Ms. LANDAVERDE was done with the full consent, knowledge and ratification of the Management of defendant, PUP 'N' TACO DRIVEUP, despite the fact that at all times

---

[1]All statutory references are to the Labor Code, unless otherwise indicated.

it was known by said defendant that Ms. LANDAVERDE was in fact an illegal alien.

"10. When the above described shooting incident occurred, at approximately the hour of 12:05 A.M., said GLORIA LANDAVERDE, rather than immediately summoning medical assistance or the police, instead telephoned her Manager, JOSELINDA GARCIA, at her home to inform her of the shooting incident, for fear that if LANDAVERDE summoned the authorities directly, she would be deported after they investigated her.

"11. Thereafter, at approximately 12:19 A.M., some 15 minutes after the shooting occurred, the Manager JOSELINDA GARCIA, summoned the L. A. Fire Department Paramedics to the scene, who arrived at 12:24 A.M., and pronounced the victim dead. The incident was reported to the Los Angeles Police Department at 12:20 A.M. Prior to the arrival of both the Paramedics and the Police Department, employee LANDAVERDE had left the premises so that she would not be discovered.

"12. The conduct of employee LANDAVERDE, as described above, was known to Manager JOSELINDA GARCIA, and the Management of defendant, PUP 'N' TACO DRIVEUP, and was confirmed, adopted and ratified by each of them.

"13. The conduct of defendant, PUP 'N' TACO DRIVEUP, its agents, employees and managers, as described hereinabove, was was [sic] an independent intervening cause of the decedent's death in that their failure to timely summon medical assistance was a proximate, aggravating and contributing factor of the decedent's death which was independent from the initial shooting incident, in that the decedent bled to death.

"14. But for the conduct of defendant, PUP 'N' TACO DRIVEUP, its management, agents and employees, plaintiff is informed and believes and thereon alleges that the decedent would have survived if medical assistance would have been timely summoned as said defendant was required to do.

"15. As a proximate result of the intentional conduct of the defendant, PUP 'N' TACO DRIVEUP, its management, agents and employees, as alleged hereinabove, the decedent died on November 22, 1981."

Defendant again demurred on the grounds that: (1) "The First Amended Complaint Complaint [sic] for Damages is exclusively within the jurisdiction of the workers' compensation system and thus the Superior Court has no subject matter jurisdiction over such a Complaint. C.C.P. Section

430.10(a)''; and (2) "The First Amended Complaint fails to state facts sufficient to constitute a cause of action. C.C.P. Section 430.10(e)."

Plaintiff filed opposition, and the matter was argued and taken under submission by the court. Thereafter, the demurrer was sustained without leave to amend on the grounds that the acts alleged were negligent rather than intentional and that there was no evidence of fraud by the employer to bring it within a recognized exception to the exclusive remedy provisions of the workers' compensation laws. (§ 3600 et seq.)[2]

An order of dismissal pursuant to Code of Civil Procedure section 581, subdivision 3, was entered on July 15, 1983. This appeal followed.

## CONTENTION

Plaintiff's sole contention is that the first amended complaint alleges sufficient facts to state a separate civil cause of action against defendant employer independent of any claim brought under the workers' compensation laws, which otherwise provide the exclusive remedy against an employer for injury or death of an employee arising out of and in the course of the employment. (§ 3600, et seq.) Specifically, plaintiff contends that the first amended complaint comes within the exception to the workers' compensation exclusive remedy provisions for intentional conduct of the employer which aggravates the initial work-related injury, recognized in *Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758].

## DISCUSSION

In *Johns-Manville,* the Supreme Court observed that where the employer is charged with intentional misconduct which goes beyond its failure to assure that the physical environment of a workplace is safe, the employer may be subject to common law liability. (*Id.,* at p. 475.) When the alleged intentional misconduct does not go beyond failure to assure a safe working environment—as when the employer conceals inherent dangers in the material employees are required to handle, or makes false representations in that regard, or allows an employee to use a machine without proper instruc-

---

[2]We apply the statutes as they read on November 22, 1981, the date of defendant's alleged tortious conduct. Sections 3601 and 3602 were amended in 1982 to codify and restrict a number of the common law exceptions to the exclusive remedy provisions. The earlier statutes are more favorable to plaintiff. (*Gallo Glass Co.* v. *Superior Court* (1983) 148 Cal.App.3d 485, 490, fn. 3 [196 Cal.Rptr. 23]; *Franco* v. *United Wholesale Lumber Co.* (1983) 148 Cal.App.3d 981, 984, fn. 1 [196 Cal.Rptr. 430].)

tion—workers' compensation has been held to be the exclusive remedy for injuries suffered.[3] (*Id.*, at pp. 473-474.)

 In the first amended complaint at issue here, the only allegation of intentional misconduct on the part of the defendant employer was the hiring of a known illegal alien who was decedent's coemployee on the night of the shooting. The modern view respecting actionable intentional misconduct by the employer is that it must be alleged and proved that the employer "acted deliberately with the specific intent to injure" the employee. (*Williams* v. *International Paper Co.* (1982) 129 Cal.App.3d 810, 818-819 [181 Cal.Rptr. 342], cited in *Iverson* v. *Atlas Pacific Engineering* (1983) 143 Cal.App.3d 219, 229, fn. 7 [191 Cal.Rptr. 696].) Certainly it cannot be seriously alleged here that the employer's hiring of an illegal alien was a deliberate act specifically intended to injure the decedent.

The conduct that plaintiff alleges actually caused the aggravation of decedent's injury was the coemployee's failure to immediately telephone for medical assistance after decedent was shot by a robber.

The facts as alleged here contrast markedly with those of *Meyer* v. *Graphic Arts International Union* (1979) 88 Cal.App.3d 176 [151 Cal.Rptr. 597], in which the court held that a cause of action for intentional misconduct against an employee for acts of a coemployee was properly stated. In *Meyer,* the employer failed to discipline, censure, criticize, suspend or discharge plaintiff's coemployee after plaintiff had complained to the employer about incidents of assault and battery committed on her by the coemployee; there-

---

[3]The court in *Johns-Manville Products Corp.* v. *Superior Court, supra,* 27 Cal.3d 465, stated the rationale for this rule as follows: "The reason for the foregoing rule seems obvious. It is not uncommon for an employer to 'put his mind' to the existence of a danger to an employee and nevertheless fail to take corrective action. (See, e.g., *Rogers Materials Co.* v. *Ind. Acc. Com., supra,* 63 Cal.2d 717, 723 [48 Cal.Rptr. 129, 408 P.2d 737].) In many of these cases, the employer does not warn the employee of the risk. Such conduct may be characterized as intentional or even deceitful. Yet if an action at law were allowed as a remedy, many cases cognizable under workers' compensation would also be prosecuted outside that system. The focus of the inquiry in a case involving work-related injury would often be not whether the injury arose out of and in the course of employment, but the state of knowledge of the employer and the employee regarding the dangerous condition which caused the injury. Such a result would undermine the underlying premise upon which the workers' compensation system is based. That system balances the advantage to the employer of immunity from liability at law against the detriment of relatively swift and certain compensation payments. Conversely, while the employee receives expeditious compensation, he surrenders his right to a potentially larger recovery in a common law action for the negligence or willful misconduct of his employer. This balance would be significantly disturbed if we were to hold, as plaintiff urges, that any misconduct of an employer which may be characterized as intentional warrants an action at law for damages. It seems clear that section 4553 is the sole remedy for additional compensation against an employer whose employee is injured in the first instance as the result of a deliberate failure to assure that the physical environment of the work place is safe." (At p. 474.)

after, the coemployee assaulted, battered and raped plaintiff. Thus, in *Meyer,* unlike the present case, there was affirmative misconduct by the employer in its prior ratification, or at least acquiescence, in the intentionally injurious misconduct of the coemployee toward plaintiff. Here, the most that was alleged as employer misconduct was the employer's failure to reasonably foresee that the hiring of an illegal alien posed a risk that such an employee would fail to promptly summon medical attention for an injured coemployee. The employer's conduct would be negligence, rather than intentional tort, as the trial court correctly found.

■ Where the complaint affirmatively alleges facts indicating coverage by the workers' compensation laws, if it fails to state additional facts negating application of the exclusive remedy provision, no civil action will lie and the complaint is subject to a general demurrer. (*Doney* v. *Tambouratgis* (1979) 23 Cal.3d 91, 97 [151 Cal.Rptr. 347, 587 P.2d 1160]; *Iverson* v. *Atlas Pacific Engineering, supra,* 143 Cal.App.3d 219, 224.) ■ Plaintiff has failed to state facts negating application of the exclusive remedy provision of the workers' compensation laws in her first amended complaint.

■ Furthermore, leave to amend a complaint following sustaining of a demurrer "should be denied where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but, under the substantive law, no liability exists" because no amendment would change the result. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 847, p. 2451.)

In the gravamen of the complaint before us, no alchemy or incantation of law can precipitate the metamorphosis of negligence to a specific intent tort.

### DISPOSITION

The order of dismissal is affirmed.

Woods, P. J., and McClosky, J., concurred.