[Civ. No. 24259.   First Dist., Div. One.   Sept. 26, 1968.]

NICK MEZERKOR, Plaintiff and Appellant, v. TEXACO, INC., et al., Defendants and Respondents.

78

Caputo, Liccardo & Burriesci, Caputo, Liccardo, Burriesci & Hogan, Caputo & Liccardo and Salvador A. Liccardo for Plaintiff and Appellant.

Edward I. Pollock, Theodore A. Horn, Robert G. Beloud, Leonard Sacks and Robert E. Cartwright as Amici Curiae on behalf of Plaintiff and Appellant.

Campbell, Custer, Warburton & Britton and John R. Fitzsimmons, Jr., for Defendants and Respondents.

SIMS, J.—Plaintiff, the lessee-operator of a service station, who seeks to recover damages for personal injuries, has appealed from a judgment, entered upon a verdict of jury, which denied him recovery against his lessor-supplier,[1] and from an order denying his motion for a new trial.[2] He contends, with assistance from amici curiae, that the court erred in refusing to give the jury his requested instructions concerning the provisions of the Labor Code which require an employer to furnish an employee a safe place to work, and further instructions setting forth applicable industrial safety orders. He also asserts that the court committed prejudicial error by instructing the jury with respect to the defenses of assumption of risk and contributory negligence, and in failing to give his proffered instructions on the rules of reasonable necessity and momentary forgetfulness.

---

[1] The record reflects that the lessor-supplier holds its interest in the property under a lease from the owners, who appeared as defendants and cross-complainants in the action. The plaintiff dismissed the action against the owners without prejudice, and they were not involved in the trial. The lessor-supplier's local consignee, or distributor, was also named as a defendant, and was exonerated by the jury's verdict. No appeal was taken from the judgment in his favor. For simplicity the parties may therefore be designated as indicated above.

[2] No appeal lies from the motion denying plaintiff's motion for a new trial and the purported appeal must be dismissed. (Code Civ. Proc., § 963; *Markley* v. *Beagle* (1967) 66 Cal.2d 951, 955 [59 Cal.Rptr. 809, 429 P.2d 129].)

Error is found in the refusal to give plaintiff's instructions concerning the defendant's duty to furnish the plaintiff a safe place to work, and in unqualifiedly instructing the jury on assumption of risk. No error is found in connection with the other specifications. After an examination of the entire cause, including the evidence, it is determined that the errors complained of and found did not result in a miscarriage of justice. The judgment must be affirmed.

Plaintiff seeks to recover for injury to the fingers of his right hand which resulted in the permanent loss of the distal tip of his middle finger, portions of the index finger and thumb, and limitation of motion in the ring finger. The injuries were received August 13, 1964, when plaintiff attempted to start the air compressor at the service station which he operated under a lease and agreement of sale with defendant, and caught his fingers in the pulley belt of the machine.

According to the plaintiff, at the time of the accident, he had been operating the service station under arrangements with defendant for about 15 years or more, and the compressor involved was in the station when he first took it over. The property was owned by third parties who had leased the service station and equipment, including the compressor, to the defendant (see fn. 1, *supra*). At the time of the accident plaintiff was operating the service station under a lease dated July 5, 1961 for a three-year term ending August 31, 1964, with a provision for renewal for successive terms of three years each, and under an agreement of sale executed the same date as the lease.

The lease provided that the lessee should maintain the equipment.[3] Nevertheless, the uncontradicted evidence showed that at the time of the original negotiations the defendant's representatives undertook to make all major repairs. The defendant's consignee-distributor testified that it was the custom and practice of the defendant to make provision for and pay for repairs that the plaintiff was incapable of effecting personally. The plaintiff's accountant testified that plaintiff's disbursements for repairs and maintence over a 10-

---

[3]The lease provided: "(5)—*Maintenance.* Lessee shall maintain the said premises, buildings and equipment, including all rest room facilities, lawns, shrubs and driveways, in good repair and in a clean, safe and healthful condition. Lessee shall keep the rest rooms furnished at all times with adequate rest room supplies. In the event of lessee's failure so to do, the lessor may make necessary repairs for the account of lessee. Lessee shall make no change, alteration or substitution in the demised premises, buildings or equipment without the prior written consent of lessor."

year period had been minimal—less than 1 percent of gross sales. The defendant had in fact arranged and paid for repairs to the gasoline pumps and a hoist. At least some months, and perhaps more than a year, before the accident, the defendant, in response to plaintiff's complaint that air was leaking, put in a new underground air line from the compressor to the hoist.

The compressor itself was set away from the station in a box and it was necessary to lift up a cover to get inside to the mechanism. It was operated by a double belt running from a smaller pulley on an electric motor to a larger pulley on the compressor itself. When the electricity was on it was ordinarily actuated automatically when the air pressure dropped below a fixed amount. It was used to furnish air for customers' tires, and for the operation of two hoists, one inside and one outside the station. According to plaintiff, in the 15 years he was operating the station, the only repair to the compressor and motor was the replacement of the belt which connected the pulleys.

The repairs to the air line were ineffective. Air continued to escape from the system, and the hoist would slip down on occasion. The compressor would run constantly unless the air valve was turned off, and there was a consequent increase in the electricity bills for the station. For about six months prior to the accident it had been the practice to turn the compressor off when it was not in use, and to activate it when needed by closing or opening a valve located on the corner of the box. About a month before the accident the condition of the compressed air system deteriorated so that the motor would just hum when the valve was opened, and it became necessary to activate the mechanism manually so that the motor and compressor would start operating.

The evidence is in conflict with respect to whether plaintiff advised the defendant or its representatives of the malfunction of the compressed air system and the hoist after the new air line was installed. Plaintiff, with corroboration from a part-time employee, who relieved him on Sundays and on Saturday afternoons when plaintiff wanted to get away, and from his wife, testified that he had telephoned to the defendant's office at Moss Landing and to the office of its consignee-distributor in Hollister to complain about the manner in which the compressor was functioning. He testified that he had also told the defendant's delivery drivers and sent a note with one to advise the defendant's office that unless the air

line compressor was fixed he would not pay the rent. None of the drivers on duty during the period had any recollection of such a complaint. The consignee-distributor denied receiving any such complaint after the air line had been replaced. A witness for plaintiff indicated that the threat to withhold the rent occurred before the new line was installed. Plaintiff expressly acknowledged that he had never told anyone he was starting the compressor by hand, and that his complaint was that "the line leaked and the compressor was running all the time and it needed fixing." The only danger allegedly mentioned was that occasioned by the hoist slipping down.

According to plaintiff's relief man, at the time of the accident the motor and compressor could be activated by putting a hand on top of the belt at one pulley and giving a pretty good push toward the other pulley. He did not like the situation and knew it was dangerous. He customarily turned the compressor on and let it run all day. He testified that there was no guard of any type located around the flywheel on the compressor. He had observed guards on other compressors, and he described to the jury the manner in which the guard would prevent anything from getting into the mechanism. With such a guard it would be impossible to start the compressor in the manner which he used, although it would be possible, with greater likelihood of getting one's fingers caught, to pull the belt from underneath. The plaintiff subsequently testified to the same effect.

Two days after the accident the plaintiff's wife called the consignee-distributor, advised him of the accident, and requested him to get the compressor fixed. The motor was repaired and the charges were paid by defendant. It was necessary to replace a bearing and the brushes, and the motor was given a general clean-up and overhaul. The repairman testified that the brushes were only used to start the motor, and that they were so worn that they would probably only work intermittently. He stated that he would not attempt to start the motor by giving the belt a pull or a shove; that he had never seen anyone do it; that the presence of two wheels and a belt and pulley, and the fact that one could not tell whether the mechanism was going to go or not, made it obvious to him that one might get injured by the moving parts.

The plaintiff testified that it was more or less routine to push the mechanism with his hand to start the motor after it was worn out. He stated that although he did not like the inconvenience of going over to start it all the time, he was not

aware of any danger in it, and he had never been told that he might get hurt starting it by hand. He said his sole concern was with the operation of the hoist. He acknowledged, however, that his friends who had started the motor on occasion had told him that they almost got their hands caught in the compressor.

On the day of the accident a vehicle came in for an oil change. It was positioned above the hoist, and the hoist was started, and then it stopped when the vehicle was a little way, about 10 or 12 inches, off the ground. The compressor motor had stopped. Plaintiff demonstrated how he pushed the apparatus and testified, "Somehow my fingers got in there. I don't know how," when the motor started after a second shove. He denied that he pulled on the belt and stated that he pushed from the big pulley on the compressor to the small pulley on the motor, and caught his finger on the top of the big one. The defendant introduced plaintiff's testimony from a prior deposition in which he testified he caught his fingers in the bottom of the little pulley, and that he held the band, as distinguished from the wheels, and gave it a jerk—"went down to this last pulley." On redirect examination, after reflection, he reiterated that he did nothing different on the day of the accident; that the belt ran on the top side from the motor to the compressor; and that he would shove that way to start it. He demonstrated to the jury how he stood, and testified, "I crossed over there went like this (indicating) and my fingers got caught . . . [by the big wheel]." Other extracts from plaintiff's deposition revealed his prior testimony that he generally started the motor by pulling the belt and that he pulled the belt on the occasion of the accident; that others who had started the motor almost got their fingers caught too; and that he told kids to get out of the box containing the compressor because they might get hurt.

On this evidence the court submitted the case to the jury under instructions which embodied principles applicable to general negligence, to the duties of a landlord to a tenant, to contributory negligence and to assumption of risk. The court refused to give proffered instructions on the duty imposed upon an "employer" by the provisions of division 5 (§§ 6300 et seq.) of the Labor Code, and on safety rules which are the subject of administrative regulations.[4]

[4]The rejected instructions read as follows: ". . . No. 7: California Labor Code #6304 states as follows: EMPLOYER. 'Employer' shall have the same meaning as in #3300 and shall also include every person having

84

After deliberating for not quite three-quarters of an hour the jury requested the court to read the instruction pertaining to plaintiff's responsibility regarding contributory negligence. The court thereupon read that instruction and the instructions defining negligence in general. Thereafter, only four minutes after retiring, the jury rendered its unanimous verdict for defendant.

*Safe Place of Employment*

▇▇▇ Plaintiff seeks to tread a path from which a fall on one side leads into an employment relationship which would subject him to the limited indemnity provided by workmen's compensation under the provisions of division 4 of the Labor Code (§§ 3201 et seq., particularly §§ 3601 and 3706; and see *Edwards* v. *Hollywood Canteen* (1946) 27 Cal.2d 802, 805 [167 P.2d 729].) The other side presents the dismal aspect of

direction, management, control, or custody of any employment, place of employment, or any employee." ". . . No. 8: California Labor Code #6302 states as follows: 'PLACE OF EMPLOYMENT.' 'Place of employment' means any place, and the premises appurtenant thereto, where employment is carried on, except a place the safety jurisdiction over which is vested by law in any State or Federal agency other than the division." ". . . No. 9: If you shall find that TEXACO, INC., and/or PETER FELICE were 'employer(s)' as heretofore defined and that the premises constituted a 'place of employment' as heretofore defined you are then instructed that the following safety orders are applicable to the defendant(s) in this case." ". . . No. 10: "California Labor Code #6311. SAFETY DEVICE AND SAFEGUARD. 'Safety device' and 'safeguard' shall be given a broad interpretation so as to include any practicable method of mitigating or preventing a specific danger, including the danger of exposure to potentially injurious levels of ionizing radiation or potentially injurious quantities of radioactive materials." ". . . No. 11: California Labor Code #6400 reads as follows: SAFE EMPLOYMENT AND PLACE: EMPLOYER'S DUTY TO FURNISH. Every employer shall furnish employment and a place of employment which are safe for the employees therein." ". . . No. 12: California Labor Code #6401 reads as follows: DUTY TO FURNISH AND USE SAFETY DEVICES AND SAFEGUARDS: PRACTICES, ETC., RENDERING EMPLOYMENT AND PLACE SAFE: OTHER THINGS. Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes, which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every thing necessary to protect the life and safety of employees." ". . . No. 13: California Labor Code #6402 reads as follows: UNSAFE EMPLOYMENT OR PLACE: REQUIRING OR PERMITTING EMPLOYEE TO GO OR BE IN: No employer shall require or permit any employee to go or be in any employment or place of employment which is not safe." ". . . No. 14: California Labor Code #6403 states as follows: FAILURE OR NEGLECT OF EMPLOYER TO PROVIDE AND USE SAFETY DEVICES, ETC. No employer shall fail or neglect: (a) *Safety devices and Safeguards.* To provide and use safety devices and safeguards. (b) *Adequate methods and processes.* To adopt and use methods and processes reasonably adequate to render the employment and place of employment safe. (c) *Other things.* To do every other thing reasonably necessary to protect the life and safety of employees." ". . . No. 15: California Labor Code #6404, states as follows: OCCU-

nonliability because of an absence of control and other factors which would give rise to responsibility on the part of the lessor-supplier.

Plaintiff relies upon the theory which has been developed under the law of this state to hold a general contractor, or owner, responsible for furnishing a safe place of employment to those coming on the premises under the control of the general contractor or owner. The principle and the conditions for its application have been set forth at length in *Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100 [18 Cal.Rptr. 527, 368 P.2d 127], as follows: ''Among the provisions read to the jury were sections 6400 and 6401 of the Labor Code, which provide that every 'employer' shall furnish employment and a place of employment which are 'safe' for the employees therein and shall do everything reasonably necessary to protect the 'safety' of employees, including the use of safety devices, safeguards, and methods reasonably adequate to insure safety. Section 6304 provides that the term 'employer' shall include 'every person having direction, management,

PANCY OR MAINTENANCE OF UNSAFE PLACE. No employer shall occupy or maintain any place of employment that is not safe.'' ''. . . No. 16: California Labor Code #6404 states as follows: REMOVAL, ETC., OF SAFETY DEVICE, SAFEGUARD, NOTICE OR WARNING: INTERFERENCE WITH USE: FAILURE OR NEGLECT TO DO OTHER THINGS. No person shall do any of the following: (a) *Removal or injury to safety device, etc.* Remove, displace, damage, destroy or carry off any safety device, safeguard, notice, or warning, furnished for use in any employment or place of employment. (b) *Interference with use of safety device, etc.* Interfere in any way with the use thereof by any other person. (c) *Interference with use of method or process.* Interfere with the use of any method or process adopted for the protection of any employee, including himself, in such employment, or place of employment. (d) *Failure or neglect to do other things.* Failure or neglect to do every other thing reasonably necessary to protect the life and safety of employees.'' ''. . . No. 17: California Administrative Code #3253 reads as follows: Prime movers, machines and equipment. (a) . . . Machinery which is in service shall be so maintained that it is safe to operate. Defective parts which create a hazard shall be repaired or replaced with safe parts as soon as possible after detection, in machines or equipment in service.'' ''. . . No. 18. California Administrative Code #3536: Belt and Pulley Drive, Guarding: (a) Any part of a belt and pulley drive, involving the use of flat, crowned or flanged pulleys, which is seven feet or less above the floor or working level shall be guarded. . . . (c) Every V-belt and pulley drive including V-belt and step-cone pulley drives, any part of which is seven feet or less above the floor or working level shall be enclosed.'' ''. . . No. 19. California Administrative Code #3517 reads as follows: Revolving and reciprocating parts: (a) Hazardous revolving or reciprocating parts in any machine not guarded by the frame of the machine or by location shall be guarded.'' ''JURY INSTRUCTION: California Labor Code #3353 states as follows: INDEPENDENT CONTRACTOR. 'Independent contractor' means any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished.''

control, or custody of any employment, place of employment, or any employee.' Section 6310 defines the terms 'safe' and 'safety' as 'such freedom from danger to the life or safety of employees as the nature of the employment reasonably permits.'

''These provisions of the Labor Code should not be construed as meaning that, where a general contractor or owner of premises does nothing more with respect to the work done by an independent contractor than exercise general supervision and control to bring about its satisfactory completion, it is his responsibility to assure compliance with all applicable safety provisions of the code and regulations issued thereunder, including those relating to the manner in which the independent contractor performs operative details of the work not affecting its ultimate result.

''We recognize that an employer-employee relationship in the usual sense is not essential for application of the Labor Code. (*Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal.2d 846, 847-849 [313 P.2d 854].) For example, the code has been applied where an employee of an independent contractor was injured by the dangerous manner in which the defendant owner of the premises operated his machinery (*Maia* v. *Security Lbr. & Concrete Co.,* 160 Cal.App.2d 16, 18 et seq. [324 P.2d 657]), by a dangerous condition existing when the owner turned the premises over to the independent contractor (*Johnson* v. *A. Schilling & Co.,* 170 Cal.App.2d 318, 324 [339 P.2d 139]), and by a dangerous condition due to the failure of the owner to complete construction after the area in question had been returned to his control (*Atherley* v. *MacDonald, Young & Nelson, Inc.,* 142 Cal.App.2d 575, 581 et seq. [298 P.2d 700]), as well as where an employee of one subcontractor was injured by the dangerous method in which work was being done by another subcontractor and the defendant general contractor had by agreement authorized the use of the method resulting in injury (*Gonzales* v. *Robert Hiller Constr. Co.,* 179 Cal.App.2d 522, 529 et seq. [3 Cal.Rptr. 832]).

''No cases have been found, however, holding that the mere right to see that work is satisfactorily completed imposes upon the one hiring an independent contractor the duty to assure that the contractor's work is performed in conformity with all safety provisions. To the contrary in *Hard* v. *Hollywood Turf Club,* 112 Cal.App.2d 263, 266 et seq. [246 P.2d 716], where the defendant general contractor had no relation to a subcontractor's work other than the right of general supervi-

sion and control, the court held that safety provisions of the code relating to the work done by the subcontractor were not applicable in determining the defendant's liability and the propriety of this holding was recognized in two of the cases cited above which applied the Labor Code (*Johnson* v. *A. Schilling & Co.*, 170 Cal.App.2d 318, 323 [339 P.2d 139]; *Atherley* v. *MacDonald, Young & Nelson, Inc.*, 142 Cal.App. 2d 575, 582 [298 P.2d 700]). The opinion in the *Hard* case pointed out that to hold in such a situation that a general contractor has the duty of overseeing labor done by various subcontractors, of inspecting the equipment used by them, and of enforcing all applicable safety provisions would be to place an extremely onerous burden upon him.'' (57 Cal.2d at pp. 106-107. See, in addition to the cases cited, *De Cruz* v. *Reid* (1968) 69 Cal.2d 217, 228-230 [70 Cal.Rptr. 550, 444 P.2d 342]; *Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 256-257 [66 Cal.Rptr. 20, 437 P.2d 508]; *Markley* v. *Beagle* (1967) 66 Cal.2d 951, 956-957 [59 Cal.Rptr. 809, 429 P.2d 129]; *Alber* v. *Owens* (1967) 66 Cal.2d 790, 792 [59 Cal.Rptr. 117, 427 P.2d 781]; *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407, 412-413 [20 Cal.Rptr. 12, 369 P.2d 708]; *O'Melia* v. *California Production Service, Inc.* (1968) 261 Cal.App.2d 618, 625 [68 Cal.Rptr. 125]; *Freire* v. *Imperial Irr. Dist.* (1967) 254 Cal.App.2d 380, 382 [61 Cal.Rptr. 925]; *West* v. *Guy F. Atkinson Constr. Co.* (1967) 251 Cal. App.2d 296, 299-302 [59 Cal.Rptr. 286]; *Souza* v. *Pratico* (1966) 245 Cal.App.2d 651, 656-659 [54 Cal.Rptr. 159]; *Conner* v. *Utah Constr. & Min. Co.* (1964) 231 Cal.App.2d 263, 271-273 [41 Cal.Rptr. 728]; *Gaw* v. *McKanna* (1964) 228 Cal. App.2d 348, 351-353 [39 Cal.Rptr. 428]; *Dauer* v. *Aerojet General Corp.* (1964) 224 Cal.App.2d 175, 180-182 [36 Cal. Rptr. 356]; *Mason* v. *Case* (1963) 220 Cal.App.2d 170, 176-177 [33 Cal.Rptr. 710]; *Jean* v. *Collins Constr. Co.* (1963) 215 Cal.App.2d 410, 415-416 [30 Cal.Rptr. 149]; *Seckler* v. *Yamin* (1963) 212 Cal.App.2d 67, 68-69 [27 Cal.Rptr. 711]; *Effisimo* v. *Henry Doelger Builders, Inc.* (1961) 193 Cal.App. 2d 462, 467-468 [14 Cal.Rptr. 445]; *Abrons* v. *Richfield Oil Corp.* (1961) 190 Cal.App2d 640, 645-647 [12 Cal.Rptr. 271]; *Kingery* v. *Southern Cal. Edison Co.* (1961) 190 Cal.App.2d 625, 633 [12 Cal.Rptr. 173]; *Decker* v. *S. H. Kress Co.* (1959) 168 Cal.App.2d 365, 368 [335 P.2d 952, 337 P.2d 163]; Brooks, *Tort Liability of Owners and General Contractors for On-the-Job Injuries to Workmen* (1965) 13 U.C.L.A. L.Rev. 99, 116-123; Note, *Duties of General Contractor Under the*

*California Labor Code* (1964) 13 Hastings L.J. 604, 606-613; and Wolfe, *Determination of Employer-Employee Relationships in Social Legislation* (1941) 41 Colum.L.Rev. 1015.)

None of the foregoing cases deal particularly with the status of the lessee-operator of the service station in the dual role of an independent contractor and statutory ''employee'' of the lessor-supplier. There are many cases dealing with the question of the relationship insofar as the responsibility of the lessor-supplier for the acts or omissions of the lessee-operator are concerned, and insofar as there is an employment relationship which makes the former responsible for furnishing the latter workmen's compensation unemployment insurance, or other benefits. (See Annotations, Status of Gasoline and Oil Distributor, etc. (1962) 83 A.L.R.2d 1282, 1292-1303; and (1938) 116 A.L.R. 457, 470-473.) Numerous cases in these and other fields have been referred to and examined.[5]

Preliminarily, it may be noted that the precedents concerning the respective right and obligation of the parties with respect to workmen's compensation benefits are not control-

[5]Respondeat Superior: *Burlingham* v. *Gray* (1943) 22 Cal.2d 87, 99-103 [137 P.2d 9]; *Crouch* v. *Gilmore Oil Co., Ltd.* (1936) 5 Cal.2d 330, 333-334 [54 P.2d 709]; *Rogers* v. *Whitson* (1964) 228 Cal.App.2d 662, 671-672 [39 Cal.Rptr. 849]; *Davis* v. *Milligan* (1958) 166 Cal.App.2d 404, 408-409 [333 P.2d 167]; *Skelton* v. *Fekete* (1953) 120 Cal.App.2d 401, 408-410 [261 P.2d 339]; *Fischer* v. *Havelock* (1933) 134 Cal.App. 584, 587-590 [25 P.2d 864]; *Burriss* v. *Texaco, Inc.* (4th Cir. 1966) 361 F.2d 169; *Humble Oil & Refining Co.* v. *Martin* (1949) 148 Tex. 175 [222 S.W.2d 995]; *Texas Co.* v. *Freer* (Tex.Civ.App. 1941) 151 S.W.2d 907; and cf. *Texas Co.* v. *Wheat* (1943) 140 Tex. 468 [168 S.W.2d 632]; *Becker* v. *Aschen* (1939) 344 Mo. 1107 [131 S.W.2d 533]; *Edwards* v. *Gulf Oil Corp.* (1943) 69 Ga.App. 140 [24 S.E.2d 843]; *Texas Co.* v. *Zeigler* (1941) 177 Va. 557 [14 S.E.2d 704]; *Boronskis* v. *Texas Co.* (1962) 344 Mass. 477 [183 N.E.2d 127]; and see discussion *Gonzales* v. *Derrington* (Cal.App. 1961) 10 Cal.Rptr. 700, 710-716, vacated and determined on other grounds (1961) 56 Cal.2d 130 [14 Cal.Rptr. 1, 363 P.2d 1].

Workmen's Compensation: *Brietigam* v. *Industrial Acc. Com.* (1951) 37 Cal.2d 849, 855 [236 P.2d 582]; *Pacific Lbr. Co.* v. *Industrial Acc. Com.* (1943) 22 Cal.2d 410, 414-420 [139 P.2d 892]; *Becker* v. *Industrial Acc. Com.* (1931) 212 Cal. 526, 531 [298 P. 979]; *Bates* v. *Industrial Acc. Com.* (1958) 156 Cal.App.2d 713, 717-719 [320 P.2d 167]; *Yancey* v. *General Petroleum Corp. of California* (1934) 20 I.A.C. 24; *Continental Oil Co.* v. *Sirhall* (1950) 122 Colo. 332 [222 P.2d 612]; *Bieluczyk* v. *Crown Petroleum Corp.* (1948) 134 Conn. 461 [58 A.2d 380]; and *Hayes* v. *Travelers Ins. Co.* (Tex. Civ. App. 1962) 358 S.W.2d 254.

Unemployment Insurance: *Empire Star Mines Co.* v. *California Emp. Com.* (1946) 28 Cal.2d 33, 43-44 [168 P.2d 686]; and *Bemis* v. *People* (1952) 109 Cal.App.2d 253, 264-267 [240 P.2d 638].

Social Security Taxes: *United States* v. *Silk* (1947) 331 U.S. 704 [91 L.Ed. 1757, 67 S.Ct. 1463]; *United States* v. *Wholesale Oil Co.* (10th Cir. 1946) 154 F.2d 745.

Chain Store Tax: *Gulf Refining Co.* v. *Fox* (S.D. West Va. 1935) 11 F.Supp. 424 [affd. (1936) 297 U.S. 381 (80 L.Ed. 731, 56 S.Ct. 510)].

ling in this case. It was agreed and the court instructed the jury, that the plaintiff was an independent contractor.[6] Both parties are bound by that stipulation. (See *Pobor* v. *Western Pac. R.R.* (1961) 55 Cal.2d 314, 320 [11 Cal.Rptr. 106, 359 P.2d 474] ; *Goodwin* v. *Wolpe* (1966) 240 Cal.App.2d 874, 878-879 [50 Cal.Rptr. 55] ; *Seckler* v. *Yamin, supra,* 212 Cal.App. 2d 67, 70.) The compensation cases, however, and, as well, the cases involving the liability of the lessor-supplier for the negligence of the lessee-operator, do focus attention on the question of control, and furnish analogies helpful to the determination of the question of "direction, management, control or custody of any . . . place of employment . . ." as raised by the provisions of section 6304 of the Labor Code, and elaborated on in *Kuntz* (57 Cal.2d at pp. 106-107) and *Woolen* (57 Cal.2d at pp. 412-413) and related cases set forth above.

Defendant asserts that the cases under Labor Code section 6304 are limited to situations where the injured party was an employee of a subcontractor, or supplier, on the job, and that here the lessee-operator himself was not the division 4 (Lab. Code, § 3351) "employee" of anyone. The fact that the lessee-operator was himeslf responsible for maintaining a safe place of employment will not necessarily defeat his right as against one who owes him a similar duty of care. (See *Alber* v. *Owens, supra,* 66 Cal.2d 790, 793-799; *Mason* v. *Case, supra,* 220 Cal.App.2d 170, 180-181; and discussion of contributory negligence, *infra.* Cf. *Souza* v. *Pratico, supra,* 245 Cal.App.2d 651, 659-662, with *Conner* v. *Utah Constr. & Min. Co., supra,* 231 Cal.App.2d 263, 276-277.) ▆ The duty of maintain-

[6]The complaint alleged that plaintiff was the lessee of defendant and operated the service station by selling gasoline and other products of defendant. It was predicated upon defendant's express agreement to maintain the premises and equipment, and its negligence in so doing. The defendant, in addition to denials and affirmative defenses, alleged that plaintiff was obligated to maintain the equipment under the lease. By amendment to the complaint plaintiff claimed wanton and reckless misconduct because of defendant's failure to repair and maintain the compressor after being notified of defects, and because of violation of safety regulations. At the pretrial conference defendant asserted plaintiff was an independent contractor, and throughout the case plaintiff accepted this categorization. The instruction given read: "You are instructed that it has been agreed between the parties that plaintiff Nick Mezerkor was an independent contractor. An independent contractor is one who carries on an independent profession, business or trade and who contracts to serve his employers desires only as to the result to be accomplished, not as to the details of method whereby that result is to be obtained." In fact, plaintiff offered an instruction in the language of Labor Code section 3353 (see fn. 4, *supra.*)

ing a safe place of employment, if established, may run to members of the general public as well as to employees of some one on the job site. (*Porter* v. *Montgomery Ward & Co., Inc.* (1957) 48 Cal.2d 846, 847-849 [313 P.2d 854] ; and see *Graves* v. *William J. Nicolson Co.* (1965) 233 Cal.App.2d 865, 867-869 [43 Cal.Rptr. 885] ; and *Gaw* v. *McKanna, supra,* 228 Cal.App.2d 348, 352-353.) In *Seckler* v. *Yamin, supra,* 212 Cal.App.2d 67, the plaintiff was apparently a sole proprietor acting as an independent contractor. Nevertheless, the court held the defendant general contractor liable for failure to furnish him a safe place of employment.

In *Graves, supra,* the court observed, ". . . . the existence of industrial hazards and the presence of workmen in various areas on a project in which many employers may be involved are not dependent on contractual relationships, and no more should be the duty to take necessary safety precautions. In *Chance* v. *Lawry's Inc.,* 58 Cal.2d 368, 378-379 [24 Cal.Rptr. 209, 374 P.2d 185], our Supreme Court held that the traditional legal classifications of invitee, licensee, and trespasser should not be used where recovery is sought from persons other than the landowner, and that an independent contractor has a duty to use reasonable care to prevent injury to all persons whom he may reasonably expect to be affected by his work." (233 Cal.App.2d at pp. 870-871.) More recently in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561], the court has rejected traditional classifications insofar as the occupier of land is concerned. It concluded, "The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative." (69 Cal.2d at p. 119.)

It follows that any designation of the relationship of the parties in this action as lessor and lessee, owner and operator, seller and purchaser, or supplier and independent contractor should not be conclusive in establishing the duty of care on either party. The question of whether one in the defendant's relationship to the business conducted by plaintiff has a duty to furnish a safe place of employment affects not only the lessee-operator, but his employees and the members of the public whom he serves. The question remains, did

the defendant as lessor-supplier under the terms of the lease and sales agreement, and by engaging in practices which were developed over the years, retain such control over the manner in which plaintiff conducted his business so as to be a "person having direction, management, control or custody of . . . [that] place of employment, . . ."? (Lab. Code, § 6304.)

Plaintiff and amici curiae point to the following facts and circumstances as establishing that defendant's control of plaintiff's premises and business made it responsible under the statutory policy. The lease and agreement of sale were interrelated. Each would automatically terminate upon termination or cancellation of the other. Plaintiff could not transfer his rights under either instrument without the consent of defendant. The agreement required plaintiff to take a minimum amount of defendant's products annually and limited the amount which defendant was bound to supply him. It reserved to the defendant the right to fix from time to time the prices for its products. The failure of plaintiff "to perform strictly any of the obligations imposed" by the agreement would give the defendant the right to terminate the agreement and presumably, with it, the lease. The rental provided in the lease was a fixed sum, plus fixed rates applicable to the gallonage delivered to the station. The plaintiff's use of the premises was restricted to "the operation of a gasoline service station, including the sale of petroleum products and automobile accessories," and he was prohibited from using them "for a parking lot, garage or repair shop (minor repairs and adjustments to motor vehicles excepted), or for the sale or rental of motor vehicles, trailers, machinery, appliances, tools or other equipment (except automobile equipment, accessories, or appliances). . . ." He could not place "signs which do not relate to the business conducted thereon," on the premises. He was required to keep the station "open for business and properly illuminated" between the hours of 7 a.m. and 9 p.m. on 365 days of the year, and not to "suffer or permit the said premises to be vacant or unattended for any period in excess of 48 hours." Plaintiff could "make no change, alteration or substitution in the demised premises, buildings or equipment" without the prior written consent of defendant. In addition to usual causes for the termination of a tenancy, the lease provided for termination of the lease by defendant if the premises were closed or unattended for any period in excess of 48 hours, or for any other breach of the terms and covenants of the lease, or in the event of the death

of the lessee. In the event of condemnation any and all interest, which might otherwise be attributed to plaintiff as lessee, was deemed to be assigned to defendant. As indicated above, the defendant, despite the terms of the lease, assumed the responsibility for all but minor repairs to the equipment. The record shows that prior to the accident, the defendant planned to remodel the station and install new equipment. (These plans were carried out by defendant in the spring of 1965 after plaintiff had terminated his tenancy.) The defendant's consignee-distributor testified that he spoke for defendant when dealing with the dealers; that he had the authority to order repairs for any equipment in a station and to commit the defendant to pay for them; that it was his duty to supervise the stations with respect to maintenance—to "see that the places were kept clean and in operable condition." Plaintiff testified that defendant's representative made him take competitor's products off the shelf; and instructed him he could not buy from other companies; that he could use no name other than defendant's on the station; that defendant attempted, unsuccessfully, to have him lower the retail price he charged for gasoline; and that he was instructed to clean up the premises. The testimony of plaintiff's accountant indicated that the bulk of the gross receipts from sales of the service station went to defendant—ranging from $22,637 for the incomplete year 1964 to almost $30,000 in 1960; that the largest deduction, almost half of the expense, deducted from gross profit was rent paid to defendant; that plaintiff's net profit over a seven-year period ranged from a high of about $3,000 to a low of $209 for that portion of 1964 in which he was in business; and that defendant obtained the majority of the expenses and almost all of the costs of sales that were paid out in connection with the operation of the business.

Plaintiff and amici curiae contend that the facts which have been recited indicate that plaintiff is in no different position than an employee in a managerial capacity, and that the controls retained by the defendant should be attended by a commensurate responsibility to provide a safe place of work.

On the other hand, defendant insists that since plaintiff was an independent contractor, it had no control over the details of the methods whereby plaintiff marketed its product to the ultimate consumers; and that since as lessor-supplier it did no more with respect to the work of plaintiff, as lessee-operator, than exercise general supervision and control to bring about a satisfactory exploitation and sale of its products, it had no

responsibility for the manner in which the plaintiff performed the operative details of the work. (Cf. *Kuntz* v *Del. E. Webb Constr. Co., supra,* 57 Cal.2d at p. 106.) Defendant refers to the fact that the lease and agreement of sale left plaintiff free to fix his own retail prices, and did not dictate the manner in which he should operate the station. He was free to hire his own employees on such terms as he desired. The principal supervision to which plaintiff referred was "they didn't exactly tell me what to do, but, especially when the big wheels [supervisors from Texaco] come along they wanted me to clean up, you know, and take off." Apparently no one ever visited the station other than the consignee-distributor or the truck drivers on the monthly or semi-monthly delivery. The plaintiff never even saw any supervisor pass by. According to the plaintiff's witnesses the local representatives did no more than deliver oil and other products. Plaintiff's wife testified that she had never heard defendant's representative tell plaintiff how to run his business; that plaintiff received no wages from defendant; that he arranged for an employee to relieve him, and compensated him by offsetting his wages against credit extended for gasoline; that he purchased his own supplies and utilities, and kept his own books; that he retained the net profits from the business for his own use and "enjoyed being in business for himself." She indicated that he was "an operator" for defendant because he could not sell anything other than defendant's products, but she acknowledged that other oils could be carried if not prominently exhibited, and that noncompetitive products were handled and sold.

Defendant's consignee-distributor testified that all he was supposed to do in supervising the stations with respect to maintenance, was to see that the places were kept clean and in operable condition; that it was not his duty to inspect the equipment at the stations under his authority; that he would not know what needed to be repaired or whether the operator could repair it himself; and that in working along with a lessee of the station to keep it in repair he would rely on the lessee to tell him what the difficulties were.

The evidence recited does not establish, as a matter of law, that defendant should be relieved of any responsibility as a statutory "employer."[7] Nor does this evidence require that

[7]For precedents absolving the owner or general contractor see: *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407, 413 [20 Cal.Rptr. 12, 369 P.2d 708]; *Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 107

defendant be deemed responsible under the statutes for maintaining a safe place of employment as a matter of law.[8] On the evidence before the court, the question was one of fact and should have been presented to the jury. (See *De Cruz* v. *Reid,* 254 Cal.App.2d 380, 382 [61 Cal.Rptr. 925]; *West* v. *Guy F. Atkinson supra,* 69 Cal.2d 217, 228; *Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d 245, 256-257; *Souza* v. *Pratico, supra,* 245 Cal.App.2d 651, 658, fn. 6; *Hardin* v. *Elvitsky, supra,* 232 Cal. App.2d 357, 369-370 and 373-374 [42 Cal.Rptr. 748]; and *Conner* v. *Utah Constr. & Min. Co., supra,* 231 Cal.App.2d 263, 273.) Plaintiff asked no more. (See Instructions Nos. 7, 8 and 9, fn. 4, *supra.*) It was error to refuse to leave to the trier of fact the question of whether defendant was a statutory "employer" under a duty to furnish plaintiff a safe place of employment.

Defendant contends that even if the evidence was sufficient to submit the question of liability under the statutory policy to the jury, the instructions offered were incomplete and misleading. It asserts that the instructions were incomplete because they did not contain an explanation, such as is found in the instruction referred to in *Souza* v. *Pratico, supra* (245 Cal.App.2d at p. 658, fn. 6; and see *Hardin* v. *Elvitsky, supra,* at pp. 371-372), of the conditions which would make defendant an "employer" as defined in section 6304 of the

[18 Cal.Rptr. 527, 368 P.2d 127]; *Freire* v. *Imperial Irr. Dist.* (1967) 254 Cal.App.2d 380, 382 [61 Cal.Rptr. 925]; *West* v. *Guy F. Atkinson Constr. Co.* (1967) 251 Cal.App.2d 296, 299 [59 Cal.Rptr. 286]; *Dauer* v. *Aerojet General Corp.* (1964) 224 Cal.App.2d 175, 181 [36 Cal.Rptr. 356]; *Kolstad* v. *Ghidotty* (1963) 212 Cal.App.2d 228, 231-232 [28 Cal. Rptr. 123]; *Abrons* v. *Richfield Oil Corp.* (1961) 190 Cal.App.2d 640, 645-647 [12 Cal.Rptr. 271]; *Williams* v. *Pacific Gas & Elec. Co.* (1960) 181 Cal.App.2d 691, 700 [5 Cal.Rptr. 585]; *Gonzales* v. *Robert Hiller Constr. Co.* (1960) 179 Cal.App.2d 522, 527-529 [3 Cal.Rptr. 832]; *Decker* v. *S. H. Kress Co.* (1959) 168 Cal.App.2d 365, 368 [335 P.2d 952, 337 P.2d 163]; and see also *McDonald* v. *Shell Oil Co.* (1955) 44 Cal.2d 785, 788-791 [285 P.2d 902].)

[8]For precedents imposing the duty as a matter of law: *Markley* v. *Beagle* (1967) 66 Cal.2d 951, 956-957 [59 Cal.Rptr. 809, 429 P.2d 129]; *Alber* v. *Owens* (1967) 66 Cal.2d 790, 792 [59 Cal.Rptr. 117, 427 P.2d 781]; *O'Melia* v. *California Production Service, Inc.* (1968) 261 Cal. App.2d 618, 625-626 [68 Cal.Rptr. 125]; *De Cruz* v. *Reid* (1968) *(Cal.App.) 65 Cal.Rptr. 698]; *Gaw* v. *McKanna* (1964) 228 Cal.App.2d 348, 354 [39 Cal.Rptr. 428]; *Jean* v. *Collins Constr. Co.* (1963) 215 Cal.App.2d 410, 415-416 [30 Cal.Rptr. 149]; *Seckler* v. *Yamin* (1963) 212 Cal.App.2d 67, 68-69 [27 Cal.Rptr. 711]; *Johnson* v. *A. Schilling & Co.* (1959) 170 Cal.App.2d 318, 324 [339 P.2d 139]; *Atherley* v. *McDonald, Young & Nelson* (1956) 142 Cal.App.2d 575, 583 [298 P.2d 700].

*A hearing was granted by the Supreme Court in *De Cruz* v. *Reid* on March 20, 1968. The final opinion of that court is reported in 69 Cal.2d 217 [70 Cal.Rptr. 550, 444 P.2d 342].

Labor Code. (See Instruction No. 7, fn. 4, *supra.*) It also complains that the instructions were defective because they lacked the qualifying language found in BAJI Instruction No. 149.[9] (See *De Cruz* v. *Reid, supra,* 69 Cal. 2d 217, 228; *Porter* v. *Montgomery Ward & Co., Inc., supra,* 48 Cal.2d 846, 847; *Hardin* v. *Elvitsky, supra,* 232 Cal.App.2d 357, 366; and *Dauer* v. *Aerojet General Corp., supra,* 224 Cal.App.2d 175, 180-181.) The instructions are also said to be misleading because, if given without qualification, they would impose a similar duty on plaintiff in his capacity of employer of his relief man, and thereby confuse the issue of contributory negligence to plaintiff's prejudice. (See *Alber* v. *Owens, supra,* 66 Cal.2d 790, 799, and discussion of contributory negligence, *infra.*)

"It is not error for a trial court to refuse a proposed instruction which is incomplete or misleading. [Citations.]" (*Pobor* v. *Western Pac. R. R. Co., supra,* 55 Cal.2d 314, 324. See also *Menchaca* v. *Helms Bakeries, Inc.* (1968) 68 Cal.2d 535, 543 [67 Cal.Rptr. 775, 439 P.2d 903]; *Graves* v. *William J. Nicolson Co., supra,* 233 Cal.App.2d 865, 869-870; and *Hardin* v. *Elvitsky, supra,* 232 Cal.App.2d 357, 372.) The objections to the form of the instructions raised by defendant, however, are not substantial. If it desired further explanation of the term "employer" as used in the statute under consideration it could have proposed its own instruction. The question of whether instructions should have been given on the subject of excuse or justification, and on the qualification of the application of the prescribed duty of care to the injured party was never reached. The situation is governed by the principle enunciated in *Menchaca, supra,* as follows: "The instant instruction, however, so far as it went, correctly and accurately stated the rule. The omission should not have been misleading; common knowledge tells us that horns should not be sounded unnecessarily and indiscriminately. Plaintiffs were not required to cover in their requested instructions each and every point favorable to defendant. If defendant had decided that further instruction about the statute would have been helpful, it could have submitted such an instruction. [Citations.]" (68 Cal.2d at p. 543.)

---

[9]As presently recommended (1967 pocket parts) BAJI Instruction No. 149 reads: "If you find that a party to this action violated . . . ., the [stataute] [ordinance] [safety order] just read to you, you will find that such violation was negligence [unless you find by a preponderance of the evidence that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law]. . . ."

The offered instructions with respect to the safety orders (see Instructions Nos. 17, 18 and 19, *supra*, fn. 4) should also be considered with respect to the general duties of defendant, who, as a lessor, is in the position of an owner of the premises.[10] The jury was instructed that "plaintiff was a tenant occupying premises leased from the defendant landlord at the time of the alleged accident" that the defendant as landlord would not be liable for injury resulting from an unsafe condition of which the plaintiff had notice or which would have come to his attention by inspection.[11] They were told that it was a question of fact whether plaintiff or defendant had a duty to repair; that if the duty was on the landlord it was not obligated to make repairs until a reasonable time after notice from the tenant, or after receiving constructive notice of the defect; and that if the repairs were undertaken by the landlord, whether it was obligated to do so or not, it had a duty to exercise ordinary care in effecting the repairs.[12] The

[10]Although plaintiff suggests it was error to charge the jury with respect to the relationship of landlord and tenant, it would have been error to fail to present this theory, even as an alternative, in view of the issues raised by the pleadings and at pretrial. (See fn. 6, *supra*.)

[11]The instruction read: "It is a prospective tenant's duty to make reasonable inspection of the premises before or at the time he takes possession; the landlord is not liable for any harm to tenant Mezerkor arising from any unsafe condition that comes to plaintiff Mezerkor's attention or that would come to his attention if he had made such an inspection and exercised ordinary care in doing so. If such unsafe condition, if any, has come to plaintiff's attention or would have if he had made such an inspection and exercised ordinary care in doing so, the tenant may not hold the landlord liable for injury resulting from it. Even if it may be said that the landlord was negligent in permitting or creating that condition, such negligence is not actionable."

[12]These instructions read: "You are instructed that it is a question of fact in this case whether plaintiff or defendants had a duty to repair. The party having such duty to repair may be contributorily negligent or negligent depending on whether they have exercised ordinary care in performing that duty.

"It should be pointed out that if you felt such duty to repair was the duty of the landlord, there would be no obligation on him to repair until a reasonable time after notice of the condition from the tenant.

"Such notice may either be actual notice or what we call constructive notice. Constructive notice may be inferred where the condition has existed for such a long period of time as it would put a reasonable man on notice. . . .

"In the absence of knowledge by the tenant to the contrary and of circumstances that would indicate the contrary to him, or would so indicate to a person of ordinary prudence in like position, the tenant has a right to assume that when the landlord, whether obligated so to do or not, undertakes to make repairs or improvements on the premises, the landlord will exercise ordinary care in doing so. If when entitled to that assumption and relying on it, but not otherwise, the tenant suffers injury from an unsafe condition resulting from the landlord's negligence in connection with such work, such negligence is actionable."

last rule was qualified by statements that the tenant could not recover if the dangerous condition resulting from the negligent repairs was patent.[13] The court also instructed the jury that due care was necessary in the performance of a duty voluntarily undertaken.[14]

These instructions suggest, although, since proposed by defendant, they do not stress the general obligations owed by a landlord to his tenant. (See 2 Rest.2d Torts, §§ 355, 356, 357, 358 and 362.) ▮ A latent defect may result from the violation of a safety order. (*Halliday* v. *Greene* (1966) 244 Cal.App.2d 482, 487-490 [53 Cal.Rptr. 267] ; and see *Porter* v. *Montgomery Ward & Co. Inc.*, *supra*, 48 Cal.2d 846, 850; *Hardin* v. *Elvitsky*, *supra*, 232 Cal.App.2d 357, 370; and *Longway* v. *McCall* (1960) 181 Cal.App.2d 723, 729-731 [5 Cal.Rptr. 818] ; but cf. *Kolstad* v. *Ghidotty* (1963) 212 Cal. App.2d 228, 232-233 [28 Cal.Rptr. 123].) ▮ Under the circumstances of this case the trier of fact could have found that the defendant, as the owner of a place which would be used as a place of employment by its prospective tenant and his employees (Cal. Admin. Code, tit. 8, §§ 3200 and 3202), delivered to its lessee possession of premises which were latently dangerous in that they had a compressor which lacked a guard as required by safety regulations. Furthermore, if the trier of fact found that defendant had the duty to repair, it was entitled to consider whether defendant had effected the repairs with due care. It could find that it was not due care to repair the compressed air system in an ostensible place of employment without placing a proper guard on the compressor.

---

[13]The instructions read: ''The rule just stated may be put in another way. If in making repairs or improvements on the leased premises, whether for consideration or gratuitously, the landlord is negligent so that either he fails to remove or correct a defective or dangerous condition or he creates a new such condition, he nevertheless, is not liable to the tenant for any injury resulting from such negligence if said condition is patent, that is, if it is known to the tenant or would be known to him in the exercise of ordinary care.

''Liability against the landlord arises in a case of his negligence in the making of repairs or improvements only if such negligence creates a latent or in other words hidden defect or danger, known to him and concealed by him from the tenant, and if the tenant suffers injury of which such condition is a proximate cause.''

[14]This instruction read: ''You are instructed that a person or corporation may become liable for negligently failing to perform a voluntary assumed undertaking even in absence of contract to do so, and a person who voluntarily undertakes to perform a service for another is under a duty to exercise due care in performing such duty, and failure to exercise due care is negligence.''

Under these circumstances it was error to not amplify the instructions on the standard of care between landlord and tenant by reference to the safety orders. The determination of whether the errors exposed were prejudicial necessitates further analysis after review of plaintiff's other contentions.

*Assumption of Risk*

■ Plaintiff contends that the court erred in instructing the jury on the principle of assumption of risk.[15] In *Hardin* v. *Elvitsky, supra,* this court noted, ''It is the established rule in California that the doctrine of assumption of risk is inapplicable where the action is based on a violation of a safety law intended to protect a class, of which the plaintiff is a member, against the very risk he is claimed to have assumed. (*Atherley* v. *McDonald, Young & Nelson, Inc., supra,* 142 Cal. App.2d 575, 587; *Bickham* v. *Southern Cal. Edison Co.,* 120 Cal.App.2d 815, 823-824 [263 P.2d 32]; *Longway* v. *McCall, supra,* 181 Cal.App.2d 723, 732.) This rule has been applied specifically to the safety orders herein involved. (*Maia* v. *Security Lbr. & Concrete Co.,* 160 Cal.App.2d 16, 20 [324 P.2d 657].)'' (232 Cal.App.2d at p. 377. See also *Mason* v. *Case, supra,* 220 Cal.App.2d 170, 177; and *Seckler* v. *Yamin, supra,* 212 Cal.App.2d 67, 69.) The propriety of the instruction depends on whether liability is to be predicated upon breach of the law and safety orders, or whether liability is

---

[15]The instructions read:

''One of the issues to be determined in this case is whether the plaintiff assumed the risk of the conduct of defendants or the use of the property or the condition of the property or the operation of the property which conduct, use, condition and operation plaintiff alleges caused the harm of which he here complains. If plaintiff assumed such risk, he may not recover for any such harm suffered by him.

''In order for plaintiff to have assumed such risk, he must have had actual knowledge of the particular danger and an appreciation of the risk involved and the magnitude thereof, and must thereafter have voluntarily assumed such risk.

''For a person to act voluntarily he must have freedom of choice. This freedom of choice must come from circumstances that provide him a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose himself to the danger in question.

''In determining whether or not a person had actual knowledge and appreciation of a particular danger and the magnitude thereof, and whether with such knowledge and appreciation, he voluntarily assented to or assumed the risk involved therein so as to bar recovery by him of damages for injury, you may consider his age, intelligence, experience and capacity along with all the other surrounding circumstances as shown by the evidence.

''When we are concerned with a question as to the possible knowledge that may have existed in the mind of another person at a certain time, we must, of necessity, look to the indirect evidence unless he has admitted having such knowledge, and we may draw from that evidence whatever inferences our judgment directs to be reasonable.''

predicated upon the common law relationship of landlord and tenant and an accompanying agreement to repair. (See *Hardin* v. *Elvitsky, supra,* at pp. 377-378.) It may be assumed that it was error to fail to give a qualified instruction along with the requested instructions first reviewed herein.

*Contributory Negligence*

█ Plaintiff's contention that the court erred in instructing the jury with respect to contributory negligence[16] cannot be sustained. Plaintiff contends that there was wilful and wanton misconduct which bars the assertion of this defense. The cases upon which plaintiff relies are those in which the doctrine of last clear chance has been equated with wilful misconduct so as to impose liability in spite of the fact that the plaintiff's negligence put him in a position of peril. (See *Girdner* v. *Union Oil Co.* (1932) 216 Cal. 197, 202 [13 P.2d 915]; *Harrington* v. *Los Angeles Ry. Co.* (1903) 140 Cal. 514, 522-523 [74 P. 15, 98 Am. St. Rep. 85, 63 L.R.A. 238]; *Esrey* v. *Southern Pac. Co.* (1894) 103 Cal. 541, 544-545 [37 P. 500]; and *Cawog* v. *Rothbaum* (1958) 165 Cal.App.2d 577, 591-592 [331 P.2d 1063].) No such circumstances are present in this case.

Although violation of a safety order may be such wilful misconduct as may make an immediate employer liable for extra compensation (see *Chick* v. *Industrial Acc. Com.* (1951) 107 Cal.App.2d 292, 295 [237 P.2d 8]), it does not bar the defense of contributory negligence. In *Alber* v. *Owens, supra,* 66 Cal.2d 790, the court ruled, ''. . . whether liability for failure to provide a safe place to work is predicated upon the common law duty or the statutory duty, the defense of contributory negligence is available to defendants. (*Mason* v. *Case* (1963) 220 Cal.App.2d 170, 177-179 [33 Cal.Rptr. 710]; *Mula* v. *Meyer* (1955) 132 Cal.App.2d 279, 284-285 [282 P.2d 107].)'' (66 Cal.2d at p. 792, footnote omitted.) That case also establishes, as pertinent to the relationship which existed in this case, that the fact the injured party was also one who was charged with a duty to furnish a safe place of employment will not make him contributorily negligent as a matter of law. (*Id.,* pp. 793-799.) The opinion concludes: ''. . . we

[16]This instruction reads: ''Contributory negligence is negligence on the part of a person injured which, cooperating in any degree with the negligence of another, helps in proximately causing the injury of which the former thereafter complains.

''One who is guilty of contributory negligence may not recover from another for the injury suffered.''

reject the argument that plaintiff-employee's actions must be judged by the rigorous standards imposed on him by statute in his capacity as an employer. They are primarily for the protection of those who serve under him. We hold that his actions relevant to his own protection must be judged by the common law standard of care.

''In order to bar an injured employee from recovery, therefore, a negligent employer must show that the employee acted in a manner unreasonable under the circumstances. [Citations.]'' (*Id.*, p. 799. See also *Mason* v. *Case, supra,* 220 Cal.App.2d at pp. 177-179 and 180-181.) There was no error in leaving the issue of contributory negligence to the jury.

### Reasonable Necessity

■ Plaintiff offered an instruction taken verbatim from *Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225 at page 239 [282 P.2d 69], on the subject of the rule of reasonable necessity as it may lessen the amount of caution required of a workman for his own care. (See also *Fry* v. *Sheedy* (1956) 143 Cal.App.2d 615, 627 [300 P.2d 242] ; and *Mula* v. *Meyer, supra,* 132 Cal.App.2d 279, 285-286.) The court did instruct the jury in accordance with another instruction offered by plaintiff which contains substantially all of the language found in *Austin*.[17] A comparison of the two reveals no material deletion, and indicates that the giving of the instruction which was refused would have been for the most part repetitious. Under these circumstances no error can be predicated upon the failure to give the proffered instruction. ■ ''The law is clear that instructions on points which have been sufficiently covered by other instructions may properly be refused although they are correctly drawn and applicable to the evidence. [Citations.] ■ 'A party is not entitled to have the jury instructed in any particular phraseology, and may not complain on the ground that his requested instructions are refused if the court, of its own motion or

---

[17]The instruction found in *Austin* reads: '' 'The amount of care which a workman is bound to exercise for his own safety must be determined by a rule of reasonable necessity. *When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities* of injury and to give attention to his work, *or requires that, in the line[s] of his duty, he takes risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation, in so far as they limit the caution that he may take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care.' ''* (44 Cal.2d 225 at p. 239. Italics indicates portions included in the instruction given by the court. See BAJI Instruction No. 102-B.)

otherwise, correctly announces the substance of the law applicable to the case. [Citation.]' (*Luis* v. *Cavin* (1948) 88 Cal.App.2d 107, 115 [198 P.2d 563]; [further citations omitted].)'' (*People* ex rel. *Dept. of Public Works* v. *Wasserman* (1966) 240 Cal.App.2d 716, 736 [50 Cal.Rptr. 95].)

*Forgetfulness*

██ The plaintiff offered an instruction on forgetfulness in language found in *Austin, supra,* 44 Cal.2d at pages 236-237. (See also *Kingery* v. *Southern Cal. Edison Co., supra,* 190 Cal.App.2d 625, 636-637, particularly fn. 3 and p. 638.) The trial court gave but one sentence from the instruction offered.[18] The first part of the instruction merely served to place the principle upon which plaintiff desired to rely in focus with this particular case. This result could be obtained by argument and plaintiff was not entitled to have the court's assistance in enunciating a formula. The second part reiterates the principle that the standard of care must depend on the circumstances, a principle further enunciated in the general instructions on negligence which were given. (See BAJI (1967 Pocket Parts) Instruction No. 101 (Revised) second par. and former Instruction No. 101-A, first par.) the remaining language indicates matters of general information which are not principles of law, but more appropriately the subject of argument and application to the particular facts of the case at hand. No error is found in the action of the court in modifying and condensing this instruction. (See *People* ex rel. *Dept. of Public Works* v. *Wasserman, supra,* 240 Cal.App. 2d 716, 736.)

*Prejudice*

██ ''No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or

---

[18]The instruction offered read:

''If you should find that plaintiff knew that starting the compressor by grabbing the belt and not releasing it immediately constituted a hazard, such fact does not necessarily establish that plaintiff was contributorily negligent. *Mere forgetfulness of a known danger does not bar recovery unless such forgetfulness constitutes negligence under the circumstances.* In this connection you may consider that a workman cannot be expected to retain in his memory at all times because of the nature of his work the fact that there are dangerous conditions surrounding him. A workman must do his work where required to do it and is necessarily bound to put his attention on such work while performing it, and it is for you to determine whether in so doing he acted as a prudent person under the circumstances.'' (Italics added to indicate the portion of the instruction given by the court. Cf. BAJI Instruction No. 103-B.)

for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; and see former art. VI, § 4½.) It is, therefore, necessary to examine the entire record to determine if the errors in the misdirections of the jury resulted in a miscarriage of justice.

The evidence points to the contributory negligence of the plaintiff. Each witness familiar with the machinery in some way recognized the danger involved in starting the compressor and motor mechanism by hand. Plaintiff's alleged ignorance of danger is qualified by his admitted knowledge that his friends had suffered close calls. He was caught in discrepancies between his testimony on the stand and that in his deposition concerning the manner in which he operated the mechanism customarily, and on the occasion when he suffered his injuries. There is also a serious question of whether the safety regulations were violated—the mechanism was enclosed in a box. More fundamentally, on the issue of proximate cause, it is questionable whether a safety guard would have prevented plaintiff and others from undertaking to start the mechanism manually, or merely increased the hazard.[19] Moreover, the evidence fails to show that defendant ever knew that the motor had to be started manually, as distinguished from knowing that it had to be kept running because of a leak in the system.

Although none of these issues can be resolved against plaintiff as a matter of law, it is concluded on the whole record that there is no reasonable probability that a retrial would result in a plaintiff's verdict. "It is not necessary to find contributory negligence as a matter of law in order to affirm the judgment." (*Mason* v. *Case, supra,* 220 Cal.App.2d 170, 183. See also *Borenkraut* v. *Whitten* (1961) 56 Cal.2d 538, 543-544 [15 Cal.Rptr. 635, 364 P.2d 467]; *Hildebrand* v. *Los Angeles Junction Ry. Co.* (1960) 53 Cal.2d 826, 832 [3 Cal. Rptr. 313, 350 P.2d 65]; *Bridgman* v. *Safeway Stores, Inc.* (1960) 53 Cal.2d 443, 450 [2 Cal.Rptr. 146, 348 P.2d 696];

---

[19]In addition to offering the safety orders, plaintiff announced that he wished to produce a witness to testify to the availability and practicabilty of safety devices and safeguards upon the compressor and motor mechanism. Apparently no ruling was obtained on this offer, and it was deemed rejected along with the offer to show the safety regulations. Nevertheless, the record contained evidence, which has been referred to above, concerning the use of guards on such machinery and that practice was therefore before the jury.

*Estate of Clark* (1919) 180 Cal. 395, 400 [181 P. 639]; *Wickesser* v. *Burns* (1965) 232 Cal.App.2d 344, 347-348 [42 Cal.Rptr. 856]; *Davis* v. *Ward* (1963) 219 Cal.App.2d 144, 151-152 [32 Cal.Rptr. 796]; *Summers* v. *Burdick* (1961) 191 Cal.App.2d 464, 472 [13 Cal.Rptr. 68]; and *Jackson* v. *Pacific Elec. Ry. Co.* (1935) 7 Cal.App.2d 287, 289 [46 P.2d 281].)

Consideration has been given to the rule stated in *Morris* v. *Oney* (1963) 217 Cal.App.2d 864 [32 Cal.Rptr. 88], as follows: ''Where either a plaintiff or a defendant is afforded no opportunity under the instructions given, to have the jury consider his theory of the case, a court may not, under the guise of examining the entire cause, including the evidence, totally eliminate a litigant's right to a jury trial for the purpose of deciding whether or not there has been a miscarriage of justice. [Citations.]'' (217 Cal.App.2d at pp. 873-874. See also *Butigan* v. *Yellow Cab Co.* (1958) 49 Cal.2d 652, 660-661 [320 P.2d 500]; *Fry* v. *Sheedy, supra,* 143 Cal. App.2d 615, 627-628; and *Gilbert* v. *Pessin Grocery Co.* (1955) 132 Cal.App.2d 212, 227 [282 P.2d 148].) If the plaintiff was contributively negligent it would be immaterial whether the defendant was negligent because of breach of duty as a landlord or because of breach of duty as a statutory ''employer.'' Although the duties of a statutory ''employer'' may be greater than those imposed by common law (see *Souza* v. *Pratico, supra,* 245 Cal.App.2d 651, 657), contributory negligence is, as has been determined above, a defense to either form of negligence.

In this case, ''The evidence on the subject of contributory negligence is not close; rather it is heavily weighted against plaintiff'' (see *Mason* v. *Case, supra,* at p. 183). Moreover, the record indicates that the jury found the plaintiff contributorily negligent. In *Borenkraut* v. *Whitten, supra,* 56 Cal.2d 538, the court considered an unauthorized comment on the verdict ''to the effect that the verdict was predicated upon a finding that defendants were 'not guilty of negligence.' '' (56 Cal.2d at p. 542.) The court concluded that under such circumstances there was no prejudicial error in giving an unwarranted instruction on contributory negligence. (*Id.,* pp. 543-544. See also *Gillespie* v. *Rawlings* (1957) 49 Cal.2d 359, 368-369 [317 P.2d 601]; and *McKay* v. *Hedger* (1934) 139 Cal.App. 266, 278 [34 P.2d 221] for examples of conclusions drawn from the verdict of the jury.) Here the jury requested rereading of the instructions on contributory negligence,[20]

---

[20]It is suggested that the court erred in rereading the instructions because it did not reread the instructions on reasonable necessity (see fn.

and then immediately returned with a unanimous verdict for the defendant. That action not only manifests that the jury resolved the issue of contributory negligence against the plaintiff, but also, suggests that in order to reach that issue, they had resolved the issue of negligence against the defendant. The erroneous failure of the court to instruct on the safe place of employment theory of liability could not be prejudicial if the jury found the defendant negligent as a landlord with a duty to repair. If the negligence of the defendant was established "the safety order gilds the lily; it belabors the obvious. So far as the case turns on [defendants] . . . negligence, the safety order adds nothing." (*Mason* v. *Case, supra,* 220 Cal.App.2d at p. 181; see also *Kramer* v. *Ferguson* (1964) 230 Cal.App.2d 237, 246 [41 Cal.Rptr. 61].)

There remains for consideration the question of whether the unqualified use of the assumption of risk instructions prejudiced the plaintiff. In the absence of the recorded request from the jury, this court would be hesitant to speculate upon the basis of the verdict and the probability that it was based on an erroneous instruction. (See *Vistica* v. *Presbyterian Hospital* (1967) 67 Cal.2d 465, 471 [62 Cal.Rptr. 577, 432 P.2d 193].) With the jury's inquiry and action in the record, and the evidence of the plaintiff's contributory negligence being what it is, the misdirection of the jury was not prejudicial and did not result in a miscarriage of justice. The plaintiff has had his day in court on the issue of his contributory negligence, and there is no reasonable probability that a retrial would result in a verdict in his favor. (See *Mason* v. *Case, supra,* at pp. 183-184.)

The purported appeal from the order denying plaintiff's motion for a new trial is dismissed, and the judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

---

17, *supra*), or forgetfulness (see fn. 18, *supra*). The instructions reread did include that portion of the definition of negligence which makes the actor's conduct dependent on the circumstances. (See BAJI (1967 Pocket Part), Instruction No. 101 (rev.) second par.; and former Instruction No. 101-A, first par.) At the conclusion of the rereading the court suggested that there might be other instructions in which the jurors were interested, and received a negative response from the foreman. Plaintiff did not direct the court's attention to or request the further instructions. Under these circumstances there was no cognizable error. (*Pittman* v. *Boiven* (1967) 249 Cal.App.2d 207, 219-220 [57 Cal.Rptr. 319]; and see *Mula* v. *Meyer* (1955) 132 Cal.App.2d 279, 286 [282 P.2d 107]; but cf. *Davis* v. *Erickson* (1960) 53 Cal.2d 860, 863-864 [3 Cal.Rptr. 567, 350 P.2d 535].)

A petition for rehearing was denied on October 24, 1968, and the following opinion was then rendered.

THE COURT.—In his petition for rehearing plaintiff seeks to avoid the facts and circumstances and the instructions which bear on his contributory negligence by dependence on the theory that wilful and wanton misconduct in disregarding safety orders will bar assertion of the defense of contributory negligence. (*Levizon* v. *Harrison* (1961) 198 Cal.App.2d 274, 279-282 [18 Cal.Rptr. 284]. See also *Williams* v. *Carr* (1968) 68 Cal.2d 579, 583-587 [68 Cal.Rptr. 305, 440 P.2d 505]; *Donnelly* v. *Southern Pac. Co.* (1941) 18 Cal.2d 863, 869-870 [118 P.2d 465]; *Givens* v. *Southern Pac. Co.* (1961) 194 Cal. App.2d 39, 43-44 [14 Cal.Rptr. 736]; Rest. 2d Torts, §§ 500 and 503; Prosser, Torts (3d ed. 1964) p. 436; and cf. *Rogers Materials Co.* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 717, 721-723 [48 Cal.Rptr. 129, 408 P.2d 737]; *Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 115-131 [251 P.2d 955]; and *White* v. *Workmen's Comp. App. Bd.* (1968) 265 Cal.App.2d 115, 120-121 [71 Cal.Rptr. 49]. He reasserts his claim that it was error to refuse to give the instructions which he offered on this theory. Examination of the new authorities cited reveals that in order to sustain a finding of wilful and wanton misconduct there must be knowledge of the dangerous operation or condition and some inference of deliberate choice in the failure to rectify it. As pointed out in the opinion, there is no evidence to show that the defendant had any knowledge that anyone was going inside the boxed mechanism to start the compressor engine. On the facts, the court properly refused the offered instructions, and the issue of contributory negligence was not foreclosed, conditionally or unconditionally.

Rehearing denied.

Appellant's petition for a hearing by the Supreme Court was denied November 20, 1968.